RUTH W. EASTER, Administratrix of the Estate of Bobby Lee Easter, Deceased v. LEXINGTON MEMORIAL HOSPITAL, INC.; DR. JAMES A. CLINE; DR. LLOYD D. LOHR; DR. C. F. MEADE; LEXINGTON CLINIC FOR WOMEN, P.A.; AND NORTH CAROLINA BAPTIST HOSPITALS, INC.

No. 116

(Filed 2 June 1981)

**Physicians, Surgeons, and Allied Professions § 16.1— doctor-patient relationship— negligence in assigning obstetrician-gynecologist to treat burn patient—genuine issues of material fact**

> In a medical malpractice action to recover for the death of plaintiff's intestate from tetanus in conjunction with other injuries, the evidence on motion for summary judgment presented a genuine issue of material fact as to whether a doctor-patient relationship ever existed between defendant physician and plaintiff's intestate where plaintiff's evidence tended to show that the intestate was brought to a hospital emergency room for injuries sustained in a hotel fire, defendant was the physician on duty in the emergency room, hospital records indicated that defendant saw the patient initially in the emergency room, and it was the policy of the hospital to keep complete and accurate records of patient care, and where defendant's evidence tended to show that he never treated or saw plaintiff's intestate and that the hospital records were in error because of mistaken assumptions regarding the night in question. Furthermore, the evidence presented a genuine issue of material fact as to the negligence of defendant in assigning or permitting an obstetrician-gynecologist, arguably untrained in the area of major burns, to treat an emergency burn patient such as plaintiff's intestate.

> Justice CARLTON dissents.

ON discretionary review to review the decision of the Court of Appeals, 49 N.C. App. 398, 271 S.E. 2d 545 (1980), affirming the entry of summary judgment for defendant Dr. James A. Cline by *Washington, J.*, at the 12 November 1979 Session of DAVIDSON Superior Court.

Plaintiff filed this wrongful death action seeking damages for the death of plaintiff's intestate allegedly caused by the negligence of the several defendants. The undisputed evidence in the case tends to show that plaintiff's intestate was one of several people injured on 16 November 1976 in a hotel fire in Lexington, North Carolina, and admitted to the emergency room at Lexington Memorial Hospital for treatment. The physician in charge of the emergency room at that time was defendant Dr. Cline. Plaintiff's intestate was examined and treated in the emergency room by defendant Dr. Lohr, an obstetrician-gynecologist who happened to be at the hospital and volunteered his services. Plaintiff's intestate was suffering second and third degree burns, lacerations and abrasions, and a broken arm. Five days later, plaintiff's intestate developed tetanus and was transferred to North Carolina Baptist Hospital in Winston-Salem, North Carolina. He died on 19 December 1976.

Plaintiff alleged that defendants were negligent in diagnosing and treating plaintiff's intestate, and specifically alleged that Dr. Cline was negligent in diagnosing and treating the intestate and in failing to examine him properly. Defendants denied negligence. Defendant Cline filed a motion for summary judgment, which was allowed. The action remains pending against all other defendants. The trial court found no just cause for delay and certified the case for immediate appeal to the Court of Appeals. That court, in an opinion by Judge Hill, Judges Arnold and Martin (Harry C.) concurring, affirmed entry of summary judgment in favor of Dr. Cline. We allowed plaintiff's petition for discretionary review on 4 March 1981.

*Michael J. Lewis and Teresa G. Bowden, attorneys for plaintiff.*

*Petree, Stockton, Robinson, Vaughn, Glaze & Maready, by J. Robert Elster and Jackson N. Steele, attorneys for defendant Cline.*

BRANCH, Chief Justice.

The sole question presented for review is whether the trial court erred in granting summary judgment in favor of defendant Dr. Cline. The Court of Appeals held that all of the evidence at the hearing on the motion for summary judgment tended to show that Dr. Cline never saw or treated plaintiff's intestate at all. The court stated: "We find no evidence in rebuttal." *Easter v. Hospital*, 49 N.C. App. at 402, 271 S.E. 2d at 547. The court further noted that "[n]o act or omission to act by Dr. Cline was the proximate cause of Mr. Easter's developing tetanus." *Id.* at 402, 271 S.E. 2d at 547. Finally, the court found "no evidence that a doctor-patient relationship ever existed between Dr. Cline and Mr. Easter." *Id.* at 401, 271 S.E. 2d at 547.

It is well settled that "Rule 56, Rules of Civil Procedure, authorizes the rendition of summary judgment upon a showing by the movant that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Vassey v. Burch*, 301 N.C. 68, 72, 269 S.E. 2d 137, 140 (1980). We have observed that the purpose of summary judgment is "to eliminate formal trials where only questions of law are involved by permitting penetration of an unfounded claim or defense in advance of trial and allowing summary disposition for either party when a fatal weakness in the claim or defense is exposed." *Id.* Finally, it is a general rule that,

> issues of negligence are ordinarily not susceptible of summary adjudication either for or against the claimant "but should be resolved by trial in the ordinary manner." 6 Pt. 2 Moore's Federal Practice, § 56.17 [42] at 946 (2d ed. 1980). Hence it is only in exceptional negligence cases that summary judgment is appropriate because the . . . applicable standard of care must be applied, and ordinarily the jury should apply it under appropriate instructions from the court.

*Id.* at 73, 269 S.E. 2d at 140.

In the instant case, as the Court of Appeals noted, defendant Cline's evidence tended to show that he never treated or saw plaintiff's intestate and thus the physician-patient relationship never arose. It is well settled that the relationship of physician to patient must be established as a prerequisite to an actionable

claim for medical malpractice. *Childers v. Frye*, 201 N.C. 42, 158 S.E. 744 (1931). There is also evidence in the record, as testified to by Charles Thomas Frock, President of Lexington Memorial Hospital, upon deposition, that the hospital records indicated that Dr. Cline saw the patient initially in the emergency room. Mr. Frock also stated that the discharge summary recited that "Dr. Cline saw the patient in the emergency room." Frock further noted that "[i]t was the policy of the hospital . . . to keep complete and accurate records of the patient care."

We recognize that Dr. Cline's evidence included the affidavit of Dr. Meade, who made the hospital records testified to by Mr. Frock, averring that the hospital records were in error due to his own mistaken assumptions regarding the night in question. Nevertheless, Mr. Frock's testimony directly contradicts the evidence presented by Dr. Cline that he never saw plaintiff's intestate. Such a contradiction raises an issue of material fact to be decided by a jury with the credibility of the witnesses likewise to be determined by a jury. We further note that there is evidence that Dr. Cline also took charge of plaintiff's treatment at least insofar as assigning him to the care of Dr. Lohr initially, and later admitting him to the care of defendant Dr. Meade.

Should a jury determine that the physician-patient relationship existed, there are additional issues of fact concerning the question of Dr. Cline's negligence, if any, in treating or failing to treat plaintiff's intestate. There is evidence tending to show that Dr. Cline was the physician in charge of the emergency room on 16 November 1976, and that upon Dr. Lohr's offer to assist in treating the burn victims, Dr. Cline pointed in the direction of plaintiff's intestate and said, "Why don't you see that one over there?" There is evidence in the record that Dr. Lohr was an obstetrician-gynecologist and had never treated major burns. Dr. Lohr stated in his deposition that the

> type of training I had at the School of Aviation and Medicine in burn treatment was the general flight surgeon program. The curriculum included taking care of acutely burned people at the scene of crashes and in triage areas. We did not actually do treatment. It was a lecture course . . . . It was not a specific course in itself, but it was covered in courses of air-sea rescue, general crash investigation, this sort of thing.

There was not a specific course in burn care. I did not actually treat the burn patients myself at that time, it was a training course.

Dr. Lohr also testified that, while he had worked in the emergency room between 1970 and 1974, he had not had an "occasion to treat any major burn patients."

We are of the opinion that the evidence raises issues of material fact as to the negligence of Dr. Cline in assigning or permitting an obstetrician-gynecologist, arguably untrained in the area of major burns, to treat an emergency burn patient such as plaintiff's intestate. There is certainly an issue of fact as to whether, assuming the existence of the physician-patient relationship, defendant Cline exercised "that degree of knowledge and skill ordinarily possessed by others of his profession," *Nash v. Royster*, 189 N.C. 408, 414, 127 S.E. 356, 359 (1925), and whether he used "his best judgment in the treatment of the case." *Id.*

The decision of the Court of Appeals affirming entry of summary judgment in favor of defendant Dr. Cline is reversed and the case is remanded to that court for further remand to the Davidson Superior Court for proceedings in accordance with this opinion.

Reversed and remanded.

Justice CARLTON dissents.