ANNIE ROSE WILLOUGHBY v. KENNETH W. WILKINS, M.D., P.A., KEN-
NETH W. WILKINS, M.D., ASHTON T. GRIFFIN, M.D., ELISHA J. CAIN,
M.D., WAYNE CO. MEMORIAL HOSPITAL, INC. AND WAYNE COUNTY

No. 828SC1190

(Filed 20 December 1983)

1. **Physicians, Surgeons and Allied Professions § 11— directed verdict for emergency room physician improper—jury question as to whether physician-patient relationship existed**

   The trial court erred in granting a directed verdict for an emergency room physician at the close of plaintiff's evidence in a medical malpractice action on the ground that a physician-patient relationship did not exist. The fact that plaintiff presented evidence that defendant evaluated plaintiff's physical condition and rendered medical advice to her would allow, though not compel, a jury to conclude that defendant had accepted plaintiff as a patient and had undertaken to diagnose and treat her.

2. **Hospitals § 3.3— liability of hospital for negligence of emergency room physician—employer-employee relationship—directed verdict for hospital and county improper**

   In a medical malpractice action, the trial court erred in granting directed verdicts in favor of defendants county and hospital on the basis that an emergency room doctor was not an agent of the hospital and that therefore any alleged negligence of defendant doctor could not be imputed to the hospital or the county. The jury could find from the evidence that there was an employer-employee relationship between defendants hospital and county, and defendant doctor, where the evidence tended to show that the contract between defendants hospital and county and defendant doctor provided that defendant doctor was to conduct and operate the emergency room of defendant hospital "in such a manner as to further the best interest of said hospital and to meet the approval of the hospital"; defendant doctor was to perform his duties in a "manner which will most effectively promote the best interest of the hospital in relation to individuals who present themselves to the emergency room"; a specified number of days per year were available to defendant doctor as educational leave and vacation; defendant doctor's work schedule in the emergency room was subject to hospital approval; defendant doctor was required to make available prompt emergency treatment to persons who came to the hospital in need of such treatment, "irregardless of their ability to pay"; defendant doctor would not maintain a private practice; and defendant doctor was required to keep adequate medical records to be filed with the hospital.

3. **Physicians, Surgeons and Allied Professions § 15— evidence of defendant doctor's prior psychiatric treatment—discovery concerning improperly denied in plaintiff's case against defendant hospital**

   In a medical malpractice action, the trial court properly denied the plaintiff's discovery motion concerning defendant doctor's prior psychiatric treatment in regard to plaintiff's case against defendant doctor; however, discovery

Willoughby v. Wilkins

of defendant doctor's prior psychiatric treatment should have been granted in plaintiff's case against defendant hospital since plaintiff's complaint alleges that defendant hospital was negligent in hiring and permitting defendant doctor to practice medicine in its emergency room.

4. **Physicians, Surgeons and Allied Professions § 15— cross-examination of medical expert concerning prior medical negligence claims against expert improperly denied**

The trial judge erred in preventing cross-examination of one defendant's expert witness concerning prior medical malpractice claims brought against the expert witness since such testimony is admissible to show bias or interest on the part of the expert.

5. **Rules of Civil Procedure § 26— failure to properly respond to request for discovery—reversal of judgments for two defendants**

The judgments entered against two defendant doctors must be reversed for failure to respond to a request for discovery pursuant to Rule 26(e)(1)(ii) where the facts indicated that plaintiff's complaint was filed September of 1979; in December of 1980, the plaintiff filed interrogatories to the defendants requesting certain information as to any expert witnesses each defendant intended to use; both defendants' answers filed in March 1981 and February 1981 indicated that no determination had been made at that time as to who would be the defendants' expert witnesses; that in response to further interrogatories, defendants in February 1982 and December 1981 both indicated that they had fully and appropriately supplemented their response to the earlier interrogatories; that on March 9, 1982 an order by the senior resident superior court judge was filed setting the case peremptorily for trial on 24 May 1982; during April of 1982 plaintiff deposed defendants and defendants deposed plaintiff's expert; that on 14 April 1982, plaintiff filed motions to compel discovery against defendants again requesting a list of defendants' expert witnesses; that at the hearing on this motion, held 21 April 1982, the attorneys for defendants asserted that no determination had been made as to the experts they would present at trial; on 5 May 1982, two and one-half weeks before the trial date, plaintiff filed another motion to compel discovery, asking that defendants not be permitted to call as witnesses experts whose identity was not disclosed on or before 14 May 1982; before the hearing was held on this motion, one defendant filed supplemental answers to plaintiff's interrogatories, listing his expert witnesses on 13 May 1982 and the other defendant filed his supplemental answers, listing his expert witnesses, on 14 May 1982. When defendants' experts were finally deposed, their testimony revealed that they had been contacted by defendants' attorneys several months before and that the contact had been made prior to the time the defense attorneys asserted to the court that they had made no determination as to who their expert witnesses would be. Supplemental answers to interrogatories are not seasonable when the answers are made so close to the time of trial that the parties seeking discovery thereby are prevented from preparing adequately for trial, even with the exercise of due diligence, and the Court was unable to say that plaintiff here was not prejudiced by the inability to adequately prepare for cross-examination of defendants' expert witnesses. Where a case has been set for trial peremptorily, whether on the motion of one of the par-

ties or on the motion of the senior resident judge or chief district court judge, the court may not properly refuse to intervene to compel discovery on a material feature of the case, such as the identity of expert witnesses in a medical negligence case.

APPEAL by plaintiff from *Llewellyn, Judge.* Judgment entered 4 June 1982 in Superior Court, WAYNE County. Heard in the Court of Appeals 29 September 1983.

Plaintiff brought this medical malpractice action to recover damages for her permanent deafness, permanent renal damage, disfiguring scars, the loss of her stillborn son, her inability to bear children in the future, and severe emotional and psychological damage. Plaintiff contends that the cause of these injuries was defendants' negligent failure to diagnose, care for and treat plaintiff.

In January of 1977, plaintiff was 24 years old, was generally healthy, and had normal hearing. She had a five-year-old daughter and was approximately six and one-half months pregnant with a second child. She was illiterate.

Plaintiff became sick on 14 January 1977, suffering with flu-like symptoms. She called defendant Wilkins, her obstetrician, on 17 January. Defendant Wilkins referred her to defendant Bennett, a family physician, who saw plaintiff on 18 January and pre-scribed medication for an upper respiratory infection. On 19 January, plaintiff was unable to urinate, and defendant Bennett prescribed a drug to control nausea and vomiting. On 20 January, defendant Wilkins cancelled plaintiff's regularly scheduled office appointment for obstetric care because of her illness. On 21 January, plaintiff's husband called defendant Bennett because plaintiff's condition had worsened and she had not urinated for several days. Defendant Bennett allegedly referred plaintiff to defendant Griffin, a family physician, because Bennett was on vacation. On 22 January, a Saturday, defendant Griffin told plain-tiff's husband to bring her in on Monday.

Later on 22 January, plaintiff's husband became so concerned about his wife's worsening condition that he took her to the emergency room of defendant Wayne County Memorial Hospital. There, she saw defendant Cain, the hospital's emergency room physician, who checked plaintiff and told her husband that they

could go home and that his wife and baby would be all right. On Sunday, 23 January, plaintiff's husband took her to defendant Griffin's office. Defendant Griffin examined plaintiff and prescribed penicillin.

On Monday, 24 January, plaintiff's husband took her to defendant Wilkins' office. Defendant Wilkins referred plaintiff to J. M. Hester, M.D., an internist, who admitted her that day to Wayne County Memorial Hospital. Plaintiff was transferred to the intensive care unit at Duke University Medical Center the next day, 25 January, with "acute respiratory distress, renal failure and abnormal liver enzymes." On 26 January, she delivered a stillborn baby boy. While at Duke, plaintiff was treated for abscesses around her kidneys. The abscesses and necessary treatment left permanent disfiguring scars. At Duke, plaintiff was treated with the antibiotic Gentamycin, the use of which carries the risk of nerve damage. As a result of this treatment, which was considered necessary by the physician at Duke, plaintiff is now completely and permanently deaf. Plaintiff was a patient at Duke until 26 April 1977.

Plaintiff filed this action on 11 September 1979 against Kenneth W. Wilkins, M.D.; the corporation of Kenneth W. Wilkins, M.D., P.A.; Ashton T. Griffin, M.D.; Elisha J. Cain, M.D.; Paul C. Bennett, M.D.; the corporation of Paul C. Bennett, M.D., P.A.; Wayne County Memorial Hospital; and Wayne County. On 3 November 1980, plaintiff took a voluntary dismissal against Bennett and his corporation. In December of 1980, plaintiff served defendants with interrogatories, which included requests for the lists of expert witnesses that defendants intended to use.

In March of 1982, the case was peremptorily set on the trial calendar for 24 May 1982. On 14 April 1982, plaintiff filed motions to compel, requesting that the court order defendants to answer certain interrogatories, especially those filed in December of 1980 concerning the identity of expert witnesses. On 21 April 1982, Judge Rouse denied these motions, based on defense counsel's assertions that they did not know the identity of their expert witnesses.

On 5 May 1982, plaintiff filed motions to produce, requesting (1) that the court order Wayne County Memorial Hospital to produce letters of reference received by the hospital concerning

defendant Cain's psychiatric treatment before he was hired, and (2) that the court require defendants to list their expert medical witnesses and not allow the defense to call expert witnesses not listed on or before 14 May 1982. Prior to the hearing on these motions, defendant Wilkins filed his supplemental answers to interrogatories which listed his expert witnesses (on 13 May 1982); defendant Griffin responded, listing his expert witnesses, on 14 May 1982. On 18 May 1982, Judge Llewellyn granted plaintiff's motions to produce and ordered that all depositions of experts were to be completed on 24 May 1982, the day the trial was to begin. The hospital refused to produce the letters and filed a motion to vacate the order directing them to do so. When the case was called for trial, Judge Llewellyn ruled that this matter had already been ruled on by Judge Rouse and vacated the 18 May 1982 order to produce the letters of reference.

The trial commenced on 24 May 1982, and on 1 June 1982, at the close of plaintiff's evidence, the trial judge denied defendants' motions for directed verdicts as to defendants Wilkins, Cain, and Griffin. Defendants' motions for a directed verdict as to the hospital and the county were granted. On 2 June 1982, the trial judge stated that he had changed his mind and decided to grant defendant Cain's motion for a directed verdict. Plaintiff's motion to exclude defendants' expert testimony based on defendants' failure to seasonably supplement their answers to interrogatories concerning their expert witnesses was also denied at this time, and the trial continued against defendants Wilkins and Griffin. The jury rendered a verdict in favor of defendants Wilkins and Griffin, and the judgment was entered on 8 June 1982.

From this judgment and from the directed verdicts granted as to defendants Cain, hospital, and county, plaintiff appeals.

*Michaels & Jernigan, by Leonard T. Jernigan, Jr., for plaintiff-appellant.*

*Patterson, Dilthey, Clay, Cranfill, Sumner & Hartzog, by Robert M. Clay and Alene M. Mercer, for defendant-appellees Kenneth M. Wilkins, M.D., P.A., and Kenneth M. Wilkins, M.D.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, by James D. Blount, Jr., and Jodee Sparkman King, for defendant-appellants Ashton T. Griffin, M.D., and Elisha J. Cain, M.D.*

*Yates & Fleishman, by Joseph W. Yates, III, and Beth R. Fleishman, for defendant-appellants Wayne County Memorial Hospital, Inc., and Wayne County.*

EAGLES, Judge.

## I.

[1] Plaintiff assigns as error the granting of defendant Cain's motion for a directed verdict at the close of plaintiff's evidence. Plaintiff contends that a directed verdict was improper because the evidence was sufficient to raise a jury issue as to whether a physician-patient relationship existed between defendant Cain and plaintiff. We agree.

A motion by a defendant for a directed verdict under G.S. 1A-1, Rule 50(a) of the Rules of Civil Procedure raises the question as to whether there is sufficient evidence to go to the jury. In considering a motion for a directed verdict, the trial judge must take all the evidence which supports plaintiff's claim as true, consider the evidence in the light most favorable to the plaintiff, and give the plaintiff the benefit of every reasonable inference in the plaintiff's favor which may be reasonably drawn. *Tripp v. Pate*, 49 N.C. App. 329, 271 S.E. 2d 407 (1980). A directed verdict is improper unless it appears as a matter of law that plaintiff cannot recover under any view of the facts which the evidence reasonably tends to establish. If, on the evidence before the court, reasonable minds could differ as to whether plaintiff is entitled to recover, a directed verdict is improper and the case should go to the jury. *Koonce v. May*, 59 N.C. App. 633, 298 S.E. 2d 69 (1982).

A physician-patient relationship between defendant Cain and plaintiff must be shown before any duty of care may be imputed to defendant Cain. "[T]he ultimate test of liability would depend upon whether the physician actually accepted [a] . . . person as a patient and undertook to treat him." *Childers v. Frye*, 201 N.C. 42, 45, 158 S.E. 744, 746 (1931). The question before us is whether, when the evidence is considered in the light most favorable to

plaintiff, there was evidence from which a jury could find that defendant Cain accepted plaintiff as a patient and undertook to treat her. We find that there was evidence of a physician-patient relationship.

The evidence presented by the plaintiff shows that: On 22 January 1977, plaintiff's husband took plaintiff to the emergency room of Wayne County Memorial Hospital. There, a nurse took plaintiff's vital signs. According to plaintiff's husband's testimony, defendant Cain, who was on duty in the emergency room, introduced himself and personally checked plaintiff's ears, eyes, throat, and chest. Defendant Cain told plaintiff to see Dr. Bennett as soon as she could, to go home and go to bed, and to drink a lot of water. There was also contradictory evidence that defendant Cain did not accept plaintiff as a patient because she was not, according to hospital policy, an "acute emergency." Defendant Cain testified that when a patient was not an acute emergency, the physician wrote it up in a "rejection book." He explained that these non-emergency patients required him to:

> Stop seeing the emergency patients that needed my care to go over there to the desk and hassle with these — no, excuse me, that — hassle with these, most of whom are crooks, didn't want to go to a private doctor because they would have to pay or they didn't want to have to get off from work and go to the doctor the next day. That was the type people we rejected, very undesirable people. . . .

Defendant Cain testified that plaintiff "was not an emergency. She had an illness which had been going on for five days and the vital signs were normal and she was under the care of a family doctor she could have reached that night."

We find that this evidence would allow a jury to find that a physician-patient relationship was established. We do not hold here that the act of "rejecting" a patient establishes a physician-patient relationship; rather, we hold that the fact that plaintiff presented evidence that defendant Cain evaluated plaintiff's physical condition and rendered medical advice to her would allow, though not compel, a jury to conclude that defendant Cain had accepted plaintiff as a patient and had undertaken to diagnose and treat her. Defendant Cain's testimony that he did not accept plaintiff as a patient directly contradicts plaintiff's

evidence that he checked her over and gave her medical advice. This is, as our Supreme Court recently held in a case concerning the establishment of the physician-patient relationship, a situation where "[s]uch a contradiction raises an issue of material fact to be decided by the jury." *Easter v. Lexington Memorial Hospital,* 303 N.C. 303, 306, 278 S.E. 2d 253, 255 (1981). It was error to accept defendant Cain's statement that he did not accept plaintiff as a patient as a legal conclusion that a physician-patient relationship was not established. Because the evidence could show, when considered in the light most favorable to the plaintiff, that there was a physician-patient relationship, we hold that the motion for directed verdict was improperly granted as to defendant Cain. We therefore reverse the judgment of the trial court as to defendant Cain and remand for a new trial.

## II.

[2]  Plaintiff assigns as error the granting of directed verdicts in favor of defendants Wayne County and Wayne County Memorial Hospital. Defendant hospital argued that defendant Cain, an emergency room doctor, was not an agent of the hospital and that therefore any alleged negligence of defendant Cain could not be imputed to the hospital or the county. Since we have reversed the directed verdict as to defendant Cain, we must now consider whether the directed verdicts in favor of the hospital and the county were proper. Here too, we must consider the evidence in the light most favorable to the plaintiff in evaluating the propriety of the directed verdict for defendants hospital and county. *Tripp v. Pate, supra; Koonce v. May, supra.*

In North Carolina, a principal generally is liable for the negligent acts of his agent which result in injury to another. *King v. Motley,* 233 N.C. 42, 62 S.E. 2d 540 (1950). Generally, there is no vicarious liability upon an employer for negligent acts of an independent contractor. *Hendricks v. Leslie Fay, Inc.,* 273 N.C. 59, 159 S.E. 2d 362 (1968). The test for determining whether a relationship between parties is that of principal and agent (employer and employee), or that of employer and independent contractor, is whether the party for whom the work is being done has the right to control the worker with respect to the manner or method of doing work. As distinguished from an agent or employee, an independent contractor is not subject to interference or control by

the employer with respect to the manner or method of doing the work. *Little v. Poole*, 11 N.C. App. 597, 182 S.E. 2d 206 (1971).

The question here is whether, when considering the evidence in the light most favorable to the plaintiff, the trial court had before it evidence that defendant Cain was subject to interference or control by defendants hospital and county with respect to the manner or method of performing his duties as an emergency room physician. We find, as this court found in *Rucker v. High Point Memorial Hospital*, 20 N.C. App. 650, 202 S.E. 2d 610, *aff'd*, 285 N.C. 519, 206 S.E. 2d 196 (1974), that there was some evidence from which an employer-employee relationship could be found to exist between the hospital and defendant Cain. We hold that the trial court erred in directing a verdict against plaintiff in favor of defendants hospital and county.

In *Rucker*, defendant emergency room doctor stated that he was an independent contractor, but this court looked to the contract between defendant doctor and defendant hospital which was introduced into evidence to find evidence of an employer-employee relationship. The court found sufficient evidence of an employer-employee relationship to preclude a directed verdict for the hospital on the agency question by reliance, *inter alia*, on contract provisions that: defendant doctor was employed at a guaranteed salary; the emergency team was to see all patients coming to the emergency room; defendant doctor was to perform his emergency room services "in a manner as to further the best interest of the hospital including the best possible care and treatment of the patient with special emphasis on the maintenance of good public relations." There the contract provided for vacation, educational leave, and sick leave. The defendant doctor there agreed he would not carry on a private practice. *Rucker*, 20 N.C. App. at 660, 202 S.E. 2d at 617.

Here, the contract between defendants hospital and county and defendant Cain was introduced into evidence and showed that, *inter alia*: defendant Cain was to conduct and operate the emergency room of defendant hospital "in such a manner as to further the best interest of said hospital and to meet the approval of the Hospital"; defendant Cain was to perform his duties in a "manner which will most effectively promote the best interest of the Hospital in relation to individuals who present themselves to

the Emergency Room"; a specified number of days per year were available to defendant Cain as educational leave and vacation; defendant Cain's work schedule in the Emergency Room was subject to hospital approval; defendant Cain was required to make available prompt emergency treatment to persons who came to the hospital in need of such treatment, "irregardless of their ability to pay"; defendant Cain would not maintain a private practice; and defendant Cain was required to keep adequate medical records to be filed with the hospital. Dr. Cain himself gave testimony that he did not make out a chart on plaintiff and that he wrote her up as a "reject" because of hospital policy. He stated: "I had nothing to do with those rules. They were in effect when I came up there." We hold that the provisions of the contract and the testimony of defendant Cain provide sufficient evidence to preclude a directed verdict for defendants on the agency question.

Defendants hospital and county argue that defendant Cain's testimony that he was an independent contractor and that he exercised his own judgment in respect to patient treatment, coupled with a contract provision declaring that defendant Cain would "be at all times acting and performing as independent contractor and not as employee of the Hospital," support the directed verdict. Defendants emphasize that the contract in *Rucker* did not expressly state that the doctor was an independent contractor, as defendant Cain's contract did. We are not persuaded by this distinction. There is abundant evidence in defendant Cain's contract to show that defendant hospital exercised significant control over defendant Cain's method of performing his duties. Our Supreme Court has said that even when a contract states that the relationship of principal and agent does not exist, "when the provisions of the contract make it a contract of agency, then it is a contract of agency, and it makes no difference by what names the parties call themselves." *Ford v. Willys-Overland,* 197 N.C. 147, 149, 147 S.E. 822, 823 (1929). This contract provision and defendant Cain's testimony to the effect that he was an independent contractor merely contradict plaintiff's other evidence that defendant Cain was an employee of defendants hospital and county. The contradiction raises an issue of material fact to be decided by the jury. *Easter, supra.*

Because the jury could find from the evidence that there was an employer-employee relationship between defendants hospital

and county, and defendant Cain, we hold that the motions for directed verdict as to defendants hospital and county were improperly granted. We therefore reverse the judgment of the trial court as to defendant Wayne County Memorial Hospital and defendant Wayne County and remand for a new trial.

## III.

Plaintiff assigns as error (1) the trial judge's sustaining of defendant's objections to the introduction of prior unrelated medical malpractice claims pending against defendant Cain and (2) the fact that the judge who ruled on discovery motions denied discovery as to defendant Cain's prior psychiatric treatment. We may not consider plaintiff's complaint that the trial judge improperly sustained defendant's objections to introduction of pending medical malpractice claims against defendant Cain. After careful review of the record, we find that a pre-trial motion to compel an admission regarding the malpractice claims was objected to by defendants and sustained, but we are unable to find any attempt by plaintiff to introduce such evidence at trial. In plaintiff's brief, plaintiff assigns as error the denial of the trial court to allow introduction of this evidence but fails to list exceptions on which this assignment is based. This court will not consider an argument based upon an issue not presented to or adjudicated by the trial tribunal, and the lack of an exception or assignment of error addressed to the issue attempted to be raised is a fatal defect. N.C. R. App. P. 10; *State v. Smith*, 50 N.C. App. 188, 272 S.E. 2d 621 (1980).

[3] As to the denial of discovery concerning defendant Cain's prior psychiatric treatment, we find no reversible error in regard to plaintiff's case against defendant Cain. Plaintiff's complaint alleges that defendant Cain was negligent in his treatment of the plaintiff. The discovery rules allow discovery "regarding any matter not privileged which is relevant to the subject matter involved. . . . It is not ground for objection that the information sought will be inadmissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence. . . ." N.C. R. Civ. P. 26(b)(1). Under this rule, we find that the judge could have allowed the discovery, but we hold that he committed no reversible error in denying the discovery. Prior psychiatric treatment of defendant Cain has no relevance to this

medical negligence action against defendant Cain, so discovery of this information would not lead to the discovery of admissible evidence against defendant Cain.

Nevertheless, discovery of defendant Cain's prior psychiatric treatment should have been granted in plaintiff's case against defendant hospital. Plaintiff's complaint alleges that defendant hospital was negligent in hiring and permitting defendant Cain to practice medicine in its emergency room. The judge disallowed discovery of defendant Cain's alleged prior psychiatric treatment, apparently based on the fact that this evidence was irrelevant and inadmissible against Cain. The fact that the evidence was irrelevant and inadmissible against Cain does not permit the court to deny discovery of information which may be relevant against defendant hospital. Defendant hospital's knowledge of defendant Cain's prior psychiatric treatment is discoverable where plaintiff charges defendant hospital with negligent hiring of defendant Cain. The information sought appears reasonably calculated to lead to the discovery of admissible evidence. N.C. R. Civ. P. 26. Prior to defendant hospital's new trial, discovery of information regarding defendant Cain's prior psychiatric treatment, if requested, must be allowed.

## IV.

[4] Plaintiff assigns as error the trial court's failure to allow plaintiff to impeach defendants' medical experts by not allowing plaintiff to cross examine defendants' experts concerning prior medical negligence claims. We may not consider this argument in regard to defendant Griffin's medical expert, Dr. Cutchin, because plaintiff never asked the court to allow cross examination of Dr. Cutchin regarding a prior medical negligence claim. Because it was not presented to or adjudicated by the trial court, we make no findings as to cross examination of Dr. Cutchin. N.C. R. App. P. 10; *State v. Smith, supra.* As to the trial court's refusal to allow plaintiff to impeach defendant Wilkins' medical expert, Dr. Parker, by cross examining him on a prior medical negligence claim brought against him, we find that the trial judge improperly denied plaintiff's request to cross examine Dr. Parker in this manner.

Defendants argue that evidence that Dr. Parker had previously been sued for medical negligence was not relevant to

plaintiff's negligence action against defendant Wilkins. We agree that this evidence is not relevant to the question of defendant Wilkins' negligence, but we hold that evidence of prior medical negligence claims brought against the expert witness is admissible to show bias or interest on the part of the expert. Cross examination is available to establish bias or interest as grounds of impeachment. 1 Brandis, N.C. Evidence § 42 (2d ed. 1982). Evidence of a witness' bias or interest is a circumstance that the jury may properly consider when determining the weight and credibility to give to a witness' testimony. 1 Brandis, N.C. Evidence § 45 (2d ed. 1982). We hold that the jury should be allowed to consider that an expert witness in a medical negligence case has previously been sued for medical negligence, for the jury could find that this would lead the expert witness to have a bias or interest. We note that if evidence to show bias is brought out on cross examination, the witness would be entitled to explain the evidence on redirect examination. *Id.* Of course, the trial judge retains the discretion to restrict and control the extent and scope of both cross examination and redirect examination. *Id.*, §§ 36 and 42.

The trial judge erred in preventing cross examination of defendant Wilkins' expert witness concerning prior medical malpractice claims brought against the expert witness. This action prevented the jury from hearing facts from which bias or interest on the part of the expert witness could be inferred. We therefore reverse the judgment of the trial court as to defendant Wilkins and remand for a new trial.

## V.

[5]   Plaintiff contends that the trial court improperly allowed the defendants' medical experts to testify because defendants had not complied with the requirements of Rule 26(e)(1)(ii) of the North Carolina Rules of Civil Procedure. Rule 26(e)(1)(ii) is addressed to parties who have responded to a request for discovery. It provides:

> A party is under a duty seasonably to supplement his response with respect to any question directly addressed to . . . the identity of each person expected to be called as an expert witness at trial, the subject matter on which he is expected to testify, and the substance of his testimony.

Plaintiff contends that defendants Wilkins and Griffin failed to seasonably supplement their responses to interrogatories requesting the list of their experts and that plaintiff was thereby prejudiced because of inadequate time to prepare to cross examine those expert witnesses at trial. We agree and reverse the judgments entered for defendants Wilkins and Griffin.

The complaint in this case was filed in September of 1979. In December of 1980, plaintiff filed interrogatories to defendants Wilkins and Griffin, requesting, *inter alia*, certain information as to any expert witnesses each defendant intended to use. Both Wilkins' answers (filed 17 March 1981) and Griffin's answers (filed 26 February 1981) indicated that no determination had been made at that time as to who would be defendants' expert witnesses. In response to further interrogatories, defendants Wilkins (on 23 February 1982) and Griffin (on 29 December 1981) both indicated that they had fully and appropriately supplemented their responses to the earlier interrogatories, i.e., they still had not identified and selected their expert witnesses.

On 9 March 1982, an order by the senior resident superior court judge was filed, setting the case peremptorily for trial on 24 May 1982. During April of 1982, plaintiff deposed defendants Wilkins and Griffin, and defendants deposed plaintiff's expert.

On 14 April 1982, plaintiff filed motions to compel discovery against defendants Wilkins and Griffin, again requesting lists of defendants' expert witnesses. At the hearing on this motion, held 21 April 1982, the attorneys for defendants Wilkins and Griffin again asserted that no determination had been made as to the experts they would present at trial. The presiding judge denied plaintiff's motion to compel, saying: "I will not require you to give names and addresses of witnesses that don't exist." This was four and a half weeks before the trial date.

On 5 May 1982, two and a half weeks before the trial date, plaintiff filed another motion to compel discovery, asking that defendants not be permitted to call as witnesses experts whose identity was not disclosed on or before 14 May 1982. Before the hearing was held on this motion, defendant Wilkins filed supplemental answers to plaintiff's interrogatories, listing his expert witnesses on 13 May 1982; defendant Griffin filed his supplemental answers, listing his expert witness, on 14 May 1982. On 18

May 1982, six days before the peremptorily scheduled trial date, the trial judge granted plaintiff's motion to compel and ordered that all depositions of experts be completed by the day the trial would begin.

Plaintiff deposed two of defendant Wilkins' experts on 19 May 1982 (five days before the trial date), one of defendant Griffin's experts on 23 May 1982 (a Sunday, the day before the trial began), and one of defendant Wilkins' experts on 25 May 1982 (the evening of the second day of trial). Because of illness in the court reporter's family, plaintiff never received a complete transcript of the testimony of defendant Griffin's expert.

At the close of plaintiff's evidence on 1 June 1982, plaintiff moved to exclude testimony of defendants Wilkins' and Griffin's expert witnesses, and to bar the use at trial of their depositions, based on defendants' failure to seasonably supplement their answers to plaintiff's interrogatories concerning their expert witnesses. On 2 June 1982, the trial judge denied plaintiff's motion to exclude testimony of defendants' experts, noting that:

> [T]he Court takes due notice of the wording of the Statute in regard to seasonably complying with answers to written interrogatories, and without any guidance from the Court of Appeals or the Supreme Court in regard to the definition of "seasonably" . . . specifically does not make any findings as to whether or not the availability of the expert witnesses was seasonably provided to the plaintiff.

Defendants Wilkins and Griffin then put on their evidence, and the jury rendered a verdict in favor of defendants.

Plaintiff contends that defendants purposefully concealed the identity of their experts and thereby abused the discovery process. Plaintiff bases this contention on the fact that when defendants' experts were finally deposed, their testimony revealed that they had been contacted by defendants' attorneys several months before and that the contacts had been made prior to the time the defense attorneys asserted to the court that they had made no determination as to who their expert witnesses would be. Defendants' attorneys argue strenuously that although they had indeed "contacted" several potential experts for the purposes of advising defendants' attorneys or reviewing testimony of plaintiff's expert,

they had not made a decision as to whom they intended to call until May 13 (for Wilkins) and May 14 (for Griffin).

Plaintiff urges us to find that defendants conducted a "trial by ambush" and that last minute supplementation of interrogatories is not consistent with the spirit of the discovery rules. North Carolina Rule 26 is substantially the same as Federal Rule 26, and federal decisions interpreting this Rule of Civil Procedure are instructive. *Sutton v. Duke*, 277 N.C. 94, 176 S.E. 2d 161 (1970). Federal cases have held that testimony must be excluded when the party from whom discovery was requested failed to exercise reasonable diligence to give the party requesting discovery adequate information concerning witnesses or theories of the case and provided only last-minute responses to requests for discovery. To allow such practices would be unfair and constitutes prejudice to the party seeking discovery inasmuch as that party would be deprived of the right and ability to adequately prepare for cross examination or the right to obtain and present rebuttal evidence. *Kirksey v. City of Jackson, Miss.*, 506 F. Supp. 491, 497 (S.D. Miss. 1981); see also, *Shelak v. White Motor Co.*, 581 F. 2d 1155 (5th Cir. 1978) and *Davis v. Marathon Oil Co.*, 528 F. 2d 395 (6th Cir. 1975). This court has held that the emphasis of the discovery process must be "not on gamesmanship but on expeditious handling of factual information." *Carpenter v. Cooke*, 58 N.C. App. 381, 384, 293 S.E. 2d 630, 632 (1982) (quoting *Willis v. Power Co.*, 291 N.C. 19, 34, 229 S.E. 2d 191, 200 (1976)).

Plaintiff urges us to define the requirement for "seasonable" supplementation to answers to interrogatories with mathematical precision and to find that defendants' supplemental answers fell outside the acceptable limit. No North Carolina or federal court has established such a formula. We too decline to establish a hard and fast rule defining "seasonable" in this context. While we decline to state a mathematical formula to determine what is "seasonable," we find that supplemental answers to interrogatories are not seasonable when the answers are made so close to the time of trial that the party seeking discovery thereby is prevented from preparing adequately for trial, even with the exercise of due diligence.

Our attention here is focused on whether the discovery process for this trial afforded the plaintiff a fair opportunity to ac-

complish what the discovery rules are designed to accomplish. The goal of the discovery rules is to facilitate the disclosure, prior to trial, of any unprivileged information that is relevant and material to the lawsuit so as to permit the narrowing and sharpening of basic issues and facts to go to trial. *Carpenter v. Cooke*, *supra*.

We find that the discovery process in this case did not function as it should have because the case was set peremptorily while discovery was not complete and the motion to compel discovery of the experts' names was denied thereafter. While the record is somewhat ambiguous, the peremptory setting was apparently on the senior resident judge's own motion, as allowed by Rule 2(f) of the General Rules of Practice for the Superior and District Courts. The philosophy of the General Rules of Practice is to "avoid technical delay and to permit just and prompt consideration and determination" of all business before the courts. Rule 1, General Rules of Practice for the Superior and District Courts. Of course, we have no quarrel with a senior resident judge having discretion to set a case peremptorily for "good and compelling reasons." That decision regarding case management properly rests in the sound discretion of the senior resident judge or chief district court judge. See, Rule 2, General Rules of Practice for the Superior and District Courts. We are troubled, though, when a major medical malpractice case has been peremptorily set for trial, but motions to compel discovery as to the identity of key expert witnesses are subsequently denied because the non-producing party asserts that it has not yet determined the identity of its expert witnesses.

We are unable to say that plaintiff here was not prejudiced by an inability to adequately prepare for cross examination of defendants' expert witnesses. This is most apparent in regard to defendant Griffin's expert witness, Dr. Cutchin. That Cutchin would be an expert witness for defendant Griffin was revealed to plaintiff on 14 May 1982, and plaintiff was afforded the opportunity to depose him on 23 May 1982, the day before the trial began. Plaintiff never received a complete transcript of Cutchin's deposition because of illness in the court reporter's family. At trial, plaintiff was able to conduct only a cursory cross examination of Cutchin, with no real effort to discredit the substance of his

testimony. Then, during jury argument, defendant Griffin's counsel commented:

> Dr. Larry Cutchin, I was surprised that they didn't even cross-examine him, they didn't even take him on, from Tarboro. They didn't try to discredit him. They knew he was telling the truth and they knew what he was testifying about the standard of care was right.

This made a persuasive argument for the jury, but it ignored the reason that plaintiff was unable to prepare for adequate cross examination of Cutchin; to wit, defendants' late response to plaintiff's requests for discovery. Clearly, the opportunity for plaintiff's counsel to depose defendants' expert witnesses only five days before trial, one day before trial, and the evening of the second day of trial was not sufficient to allow plaintiff's counsel a fair opportunity to prepare. The defendants' supplemental answers identifying the defendants' experts came so close to the time of trial that plaintiff was prevented from preparing adequately for cross examination of defendants' expert witnesses.

We hold that where a case has been set for trial peremptorily, whether on the motion of one of the parties or on the motion of the senior resident judge or chief district court judge, the court may not properly refuse to intervene to compel discovery on a material feature of the case, such as the identity of expert witnesses in a medical negligence case. Plaintiff moved, at the close of their evidence, to exclude testimony of defendants' experts, based on defendants' failure to seasonably supplement their answers. We note that the imposition of sanctions under Rule 37 of the Rules of Civil Procedure for failure to comply with Rule 26(e) is within the sound discretion of the trial judge. *American Imports, Inc. v. G. E. Employees W. Region Fed. Credit Union,* 37 N.C. App. 121, 245 S.E. 2d 798 (1978). But *cf. Shepherd v. Oliver,* 57 N.C. App. 188, 290 S.E. 2d 761, *rev. denied,* 306 N.C. 387, 294 S.E. 2d 212 (1982). We reverse here, not for the trial judge's failure to impose sanctions under Rule 37, but because of improper denial of plaintiff's motion to compel discovery. The trial court erred in denying on 21 April 1982 plaintiff's motion to compel discovery of expert witnesses' identities when the case previously had been peremptorily set for 24 May 1982. The judg-

ments in favor of defendants Wilkins and Griffin must be reversed and the case remanded for a new trial.

## VI.

We find no merit in two other assignments of error raised by plaintiff. Plaintiff assigns as error the trial judge's failure to instruct the jury to disregard defense counsel's statement to the jury that directed verdicts had been entered against certain codefendants. The control of arguments of counsel is within the sound discretion of the trial judge, and we find no abuse of that discretion here. See *State v. Cousins*, 289 N.C. 540, 223 S.E. 2d 338 (1976).

Plaintiff also assigns as error the trial court's jury instruction on the issue of abandonment. The trial judge used North Carolina Pattern Jury Instruction No. 809.30: Medical Negligence Duty to Attend, which was amended in 1980 to conform to G.S. 90-21.12, the statute on the "standard of health care." We hold that this instruction was a full and fair charge to the jury on the issue of abandonment.

Reverse and remand for a new trial as to all defendants.

Judges ARNOLD and PHILLIPS concur.