Jane DOE, Individually and as Administratrix of the Estate of John Doe, Plaintiff,

v.

AMERICAN NATIONAL RED CROSS, Defendant.

No. 91–03–CIV–3–BR.

United States District Court, E.D. North Carolina, Fayetteville Division.

July 10, 1992.

**302**

Burton Craige, Johnny R. Edwards, James Carlton Thornton, Tharrington, Smith & Hargrove, Raleigh, N.C., for plaintiff.

Leslie C. O'Toole, Richard W. Ellis, Smith, Helms, Mulliss & Moore, Raleigh, N.C., for defendant.

## ORDER

BRITT, District Judge.

This matter is before the court on defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The motion has been fully briefed and several suggestions of subsequently decided authority have been filed by both parties. Now, having heard oral argument on 1 July 1992, the court is ready to rule.

## FACTS

In February 1985, plaintiff John Doe [1] was severely burned in a house fire in Clinton, North Carolina and was subsequently admitted to the North Carolina Memorial Hospital Burn Center in Chapel Hill for immediate, emergency treatment. During several, successive surgeries for his burns between 14 February 1985 and 2 March 1985, John Doe received 19 units of blood supplied by defendant American National Red Cross ("Red Cross"). After these surgeries, John Doe eventually recovered from his burns and returned to a normal state of health.

However, in the spring of 1989 and the months thereafter, John Doe began experiencing various symptoms usually associated with AIDS: a gradual onset of fatigue, accompanying weight loss, persistent mouth pain, and severe pruritis [2]. On 9 December 1989, John Doe subsequently tested positive for the HIV virus. Two weeks later, his wife, Jane Doe, also tested positive for the virus and is currently asymptomatic. Within one year from the discovery of their condition, John and Jane Doe filed this suit on 30 November 1990 in the Superior Court of Sampson County, North Carolina, and subsequently, defendant properly removed this action to this court on 4 January 1991 [3]. John Doe died of AIDS on 20 August 1991.

---

**1.** John Doe died of AIDS during this litigation on 20 August 1991, and Jane Doe, John Doe's wife, was substituted as administratrix of his estate. Jane Doe is also a plaintiff in this action and brings this suit individually alleging negligence as against defendant. Because of John Doe's death, this action, as it pertains to him, transformed into a wrongful death action, and an amended complaint was filed on 11 February 1992 to reflect this change in the nature of plaintiff Jane Doe's claims.

**2.** An acute itching condition. *Stedman's Medical Dictionary,* 1277 (25th ed. 1990).

**3.** As grounds for removal to this court, defendant, in its notice of removal filed 4 January 1991 (which was unopposed), asserted that federal jurisdiction was predicated upon both diversity jurisdiction and federal question juris-

diction. Defendant maintained that diversity jurisdiction pursuant to 28 U.S.C. § 1332 existed in that plaintiffs are from North Carolina, defendant is incorporated under federal charter in the District of Columbia, and that at least $50,000 is in dispute in this action. Defendant also asserted that federal question jurisdiction existed under 28 U.S.C. § 1331 because it is organized under a federal charter pursuant to 36 U.S.C. § 2. The court recognizes that the latter question of federal question jurisdiction, as it pertains to defendant, has been the source of significant dispute in other courts. The United States Supreme Court has recently addressed this issue, however, in *American Nat'l Red Cross v. S.G.,* — U.S. ——, 112 S.Ct. 2465, 120 L.Ed.2d 201 (1992), where the Court held that the "sue and be sued" provision in the Red Cross' federal charter confers original federal

Using what has been characterized as a "lookback" procedure [4], it was determined that 19 units of blood had been administered to John Doe during his successive surgeries. Eighteen (18) of the nineteen (19) donors whose units of blood were transfused into John Doe subsequently tested HIV-negative. However, one donor of the nineteen (19) has tested positive for HIV. According to the Donor Health History card [5], the donor of the HIV-infected blood unit, No. 12FG32811, is currently a 28–year old male and donated blood to the Carolinas Region of the American National Red Cross on 11 February 1985. Plaintiff alleges that defendant was negligent both in failing to properly screen the implicated donor and in failing to implement effective testing procedures to detect the HIV-infected blood which was transfused into John Doe.

## DISCUSSION

In support of its motion for summary judgment, defendant first asserts that the Red Cross is a "health care provider", as defined in N.C.Gen.Stat. § 90–21.11 [6], which performs professional health care services. As such, defendant maintains that the malpractice, 4–year statute of repose, provided in N.C.Gen.Stat. § 1–15(c),

applies to bar plaintiff's claim. N.C.Gen. Stat. § 1–15(c) requires that:

Except where otherwise provided by statute, a cause of action for malpractice arising out of the performance of or failure to perform professional services shall be deemed to accrue at the time of the occurrence of the last act of the defendant giving rise to the cause of action: Provided that whenever there is bodily injury to the person, economic or monetary loss, or a defect in or damage to property which originates under circumstances making the injury, loss, defect or damage not readily apparent to the claimant at the time of its origin, and the injury, loss, defect or damage is discovered or should reasonably be discovered by the claimant two or more years after the occurrence of the last act of the defendant giving rise to the cause of action, suit must be commenced within one year from the date discovery is made: Provided nothing herein shall be construed to reduce the statute of limitation in any such case below three years. Provided further, that in no event shall an action be commenced more than four years from the last act of the defendant giving rise to the cause of action: Provided further, that where damages are sought by reason of a foreign object, which has

---

question jurisdiction. In light of this decision, the court now acknowledges that both diversity jurisdiction and federal question jurisdiction exist in this case.

**4.** Apparently, a procedure whereby an examination is made into the number of units of blood administered to a patient and matching donor cards to the corresponding blood unit numbers. Once a match is made, then the respective donors are requested to appear for a subsequent blood test to determine whether any of them test positive or negative for the target virus, such as here the HIV virus.

**5.** A card generally indicating the donor's history of previous blood donations, the general health of the donor on the day of the donation, i.e., body temperature, weight, blood pressure, and a brief medical history of any diseases or complications the donor may have had. The card was primarily filled out and signed by members of the Red Cross staff at a particular blood collecting station; however, there is a block of health history questions provided which the donor must answer and give his signature. This card

is attached to defendant's initial memorandum in support of this motion as Exhibit B–11.

**6.** N.C.Gen.Stat. § 90–21.11 provides in pertinent part:

As used in this Article, the term "health care provider" means without limitation any person who pursuant to the provisions of Chapter 90 of the General Statutes is licensed, or is otherwise registered or certified to engage in the practice of or otherwise performs duties associated with any of the following: medicine, surgery, dentistry, pharmacy, optometry, midwifery, osteopathy, podiatry, chiropractic, radiology, nursing, physiotherapy, pathology, anesthesiology, anesthesia, laboratory analysis, rendering assistance to a physician, dental hygiene, psychiatry, psychology; or a hospital as defined by G.S. 131–126.1(3); or a nursing home as defined by G.S. 130–9(e)(2); or any other person who is legally responsible for the negligence of such person, hospital or nursing home; or any other person acting at the direction or under the supervision of any of the foregoing persons, hospital, or nursing home.

no therapeutic or diagnostic purpose or effect, having been left in the body, a person seeking damages for malpractice may commence an action therefor within one year after discovery thereof as hereinabove provided, but in no event may the action be commenced more than 10 years from the last act of the defendant giving rise to the cause of action.

N.C.Gen.Stat. § 1–15(c) (1979). Thus, defendant concludes that because plaintiff filed her action on 30 November 1990, more than 4 years from the date of the last act of defendant giving rise to the cause of action—that of either the collection of the blood from the donor on 11 February 1985, or the transfusing of blood into John Doe[7] in late February or early March 1985—defendant is entitled to judgment as a matter of law.

Defendant next argues that plaintiff's claims fail because the Red Cross met the applicable standard of care for actions arising out of the rendering of professional health care services in North Carolina as established by N.C.Gen.Stat. § 90–21.12[8]. Because the Red Cross complied with the existing standards of practice for volunteer blood collection professionals who are similarly situated, so the argument goes, defendant maintains that it is entitled to summary judgment on this second ground as well.

In response, plaintiff first asserts that under North Carolina law defendant should be judged against an ordinary negligence standard of due care, rather than a professional malpractice standard of care. With the enactment of N.C.Gen.Stat. § 90–220.-13[9], plaintiff argues that this statute speaks directly and exclusively to the standard of care for blood banks in the selection of donors, and as such, it controls the present case.

Plaintiff next[10] contends that because defendant did not furnish any health care services to John Doe, individually, plaintiff's claims can only be grounded in negligence, not professional malpractice. To support this argument, plaintiff points to the fact that no physician-patient relationship existed here between John Doe (the blood recipient) and the Red Cross. Therefore, because plaintiff cannot bring a malpractice claim against the Red Cross absent a physician-patient relationship, plaintiff asserts that the 4–year statute of repose for malpractice actions is inapplicable here. The court agrees with plaintiff insofar as this action is not one for malpractice under North Carolina law, and thus the 4–year statute of repose in N.C.Gen.Stat. § 1–15(c) is inapplicable.

■ The term "medical malpractice action", as defined in N.C.Gen.Stat. § 90–21.11, refers to "a civil action for damages for personal injury or death arising out of the furnishing or failure to furnish professional services in the performance of medical, dental, or other health care by a health care provider." N.C.Gen.Stat. § 90–21.11 (1987). However, in order to state a claim for medical malpractice under North Carolina law, there must first exist a physi-

---

**7.** The court recognizes, however, that the Red Cross did not actually transfuse the blood into John Doe during his surgeries in late February and early March—a point which will be addressed later in this order.

**8.** N.C.Gen.Stat. § 90–21.12 provides that:

In any action for damages for personal injury or death arising out of the furnishing or the failure to furnish professional services in the performance of medical, dental, or other health care, the defendant shall not be liable for the payment of damages unless the trier of the facts is satisfied by the greater weight of the evidence that the care of such health care provider was not in accordance with the standards of practice among members of the same health care profession with similar training

and experience situated in the same or similar communities at the time of the alleged act giving rise to the cause of action.
N.C.Gen.Stat. § 90–21.12 (1990).

**9.** N.C.Gen.Stat. § 90–220.13 provides that "[i]n the selection of donors due care shall be exercised to minimize the risks of transmission of agents that may cause hepatitis or other diseases." N.C.Gen.Stat. § 90–220.13 (1971).

**10.** As a fallback position, plaintiff also argues that even if this were a medical malpractice action, the 10–year statute of repose in N.C.Gen. Stat. § 1–15(c) for late discovery of foreign objects is applicable. Because the court rules in favor of plaintiff for other reasons, this argument will not be addressed.

cian-patient relationship [11]. *Easter v. Lexington Memorial Hospital, Inc.*, 303 N.C. 303, 278 S.E.2d 253, 255 (1981); *Childers v. Frye*, 201 N.C. 42, 158 S.E. 744 (1931). Whether a physician-patient relationship is established "depends upon whether the defendant actually accepted [plaintiffs] as patients and undertook to treat them." *Mozingo v. Pitt County Memorial Hospital, Inc.*, 101 N.C.App. 578, 400 S.E.2d 747, 751 (1991) (quoting *Childers v. Frye*, 158 S.E. at 746 ("ultimate test of liability would depend upon whether the physician actually accepted [a] ... person as a patient and undertook to treat him.")), *aff'd on different grounds*, 331 N.C. 182, 415 S.E.2d 341 (1992).

██ In this case, it is clear that no physician-patient relationship existed between John or Jane Doe and the Red Cross. The Red Cross did not at any time examine, treat, care for, or render any medical diagnosis on the Does. Although defendant mentions that its processing of blood is for the ultimate protection of the recipient, defendant fails to cite any substantial connection linking John or Jane Doe to defendant in a professional capacity. Furthermore, the court believes that defendant's argument fits more in line with that of a pharmaceutical company which supplies various medicines to hospitals and doctors for use in their patients. The transfusion of another's blood, like the taking or injection of a pharmaceutical (particularly that of an intravenous solution designed to provide nourishment to patients who cannot eat or feed themselves), is the process of injecting a substance to dramatically improve one's health, or more often than not, save one's life. In this sense, blood banks and pharmaceutical manufacturers can be seen in much the same light. First, both entities supply vital substances [12] to hospitals and physicians for ultimate use in patients. Second, both perform tasks of quality control each unique to its own processing methods of blood and pharmaceuticals—research and development, testing, and screening. And third, each has its own supervisory medical board staffed with its own physicians who specialize in a particular field associated with the functions of each entity. From this, the court finds that the collection, distribution and sale of blood, like the manufacture and sale of pharmaceuticals, is not the practice of medicine. The Red Cross did not in any way act as a physician to the Does. Therefore, no physician-patient relationship existed between John or Jane Doe and the Red Cross, and in the absence of such, this action cannot be characterized as a "medical malpractice action" under North Carolina law. In so ruling, the court declines to decide whether the Red Cross is a "health care provider" as defined in N.C.Gen.Stat. § 90–21.11.

Moreover, this court is guided by basic principles of statutory construction, as enunciated by the North Carolina Supreme Court, that are applicable to this action. "Where one of two statutes might apply to the same situation, the statute which deals more directly and specifically with the situation controls over the statute of more general applicability." *Trustees of Rowan Technical College v. J. Hyatt Hammond Associates, Inc.*, 313 N.C. 230, 328 S.E.2d 274, 279 (1985). Using this guideline in

---

11. The court is also aware that in North Carolina a physician may be held liable in a supervisory capacity outside the realm of a normal physician-patient relationship for failure to exercise reasonable care in supervising residents who directly administer care to a patient. *Mozingo v. Pitt County Memorial Hospital, Inc.*, 331 N.C. 182, 415 S.E.2d 341 (1992). In *Mozingo*, the North Carolina Supreme Court concluded that "the defendant's duty of reasonable care in supervising the residents was not diminished by the fact that his relationship with the plaintiffs did not fit traditional notions of the doctor-patient relationship." *Id.* 415 S.E.2d at 344.

The court finds that this analysis, as it pertains to an examination of the physician-patient relationship in the context of medical malpractice claim, is inapposite here.

12. The court observes that North Carolina's "blood shield statute", N.C.Gen.Stat. § 130A–410, classifies the "procurement, processing, distribution or use of whole blood, plasma, blood products, [and] blood derivatives ... for the purpose of ... transfusing ... them into the human body ... [as] the rendition of a service...." The obvious purpose of this statute is to prohibit application of warranty or products liability claims against blood banks.

interpreting § 1–15(c), the North Carolina Supreme Court held that "the legislature ... intended [§ 1–15(c)] to apply to malpractice claims against all professionals who are not dealt with more specifically by some other statute." *Id.*

In this case, blood banks are indeed dealt with more specifically by some other statutes, namely N.C.Gen.Stat. §§ 90–220.12 *et seq.* Of specific importance, N.C.Gen.Stat. § 90–220.13 provides that "[i]n the selection of donors *due care* shall be exercised to minimize the risks of transmission of agents that may cause hepatitis or other diseases." N.C.Gen.Stat. § 90–220.13 (1971) (emphasis added). The court views this piece of legislation as an unequivocal intent by the North Carolina legislature to make blood banks subject to an ordinary standard of negligence, rather than a professional standard of negligence as set forth in the medical malpractice statutes, N.C.Gen.Stat. § 90–21.12. As such, the court also believes that this is consistent with its finding that no professional services were rendered here by defendant to John or Jane Doe.

As further evidence of this legislative intent, the court is aware that § 90–220.13 was enacted in 1971 and that § 90–21.12 was enacted 4 years later in 1975. "It is always presumed that the legislature acted with care and deliberation and with knowledge of prior and existing law." *State v. Benton*, 276 N.C. 641, 174 S.E.2d 793, 804 (1970); *Ridge Community Investors, Inc. v. Berry*, 293 N.C. 688, 239 S.E.2d 566, 570 (1977). Additionally, it is presumed that when a legislature intends to modify or supersede a specific statute, it will do so expressly. *Spaugh v. Charlotte*, 239 N.C. 149, 79 S.E.2d 748, 755 (1954). Given this, the court can only presume that the legislature acted with knowledge of § 90–220.13 when it enacted § 90–21.12 in 1975. Thus, the court finds that, under the standards articulated in *Trustees of Rowan Tech., Benton*, and *Spaugh*, the North Carolina legislature: 1) specifically dealt with blood

banks with the enactment of § 90–220.13; 2) expressly intended that blood banks be held subject to an ordinary standard of care; and 3) intentionally omitted blood banks from inclusion in § 90–21.12 because it acted with knowledge of § 90–220.13 when it enacted § 90–21.12 in 1975.

The court also recognizes that N.C.Gen. Stat. § 1–15(c) applies to all claims of malpractice, not just medical malpractice. However, in order for this statute to apply, there must first be a "performance of or failure to perform *professional services* ...." N.C.Gen.Stat. § 1–15(c) (emphasis added). From a careful review of North Carolina law as previously provided, the court finds that the rendering of "professional services" as that term is set forth in N.C.Gen.Stat. § 1–15(c), necessarily includes those services where a professional relationship exists between plaintiff and defendant—such as a physician-patient [13] or attorney-client relationship. No such relationship existed here between John or Jane Doe and the Red Cross. As indicated earlier, the Red Cross did not treat or care for plaintiff in any way other than to initially take and process the blood which was transfused into John Doe. Because no professional relationship existed between John or Jane Doe, the Red Cross did not render professional services to them as that term is used in § 1–15(c). As such, this action is not one for malpractice, and as a result, the 4–year statute of repose in § 1–15(c) does not apply to bar plaintiff's claims. *See Carolina Beach Fishing Pier, Inc. v. Carolina Beach*, 274 N.C. 362, 163 S.E.2d 363, 370 (1968) ("[i]t is a familiar principle that a statute of limitations should not be applied to cases not clearly within its provisions; it should not be extended by construction."). Rather, this action is subject to the North Carolina personal injury statutes of limitations found in N.C.Gen.Stat. §§ 1–52(5), (16). Under these statutes, it is undisputed that plaintiff's claim was timely filed.

Finally, the court feels compelled to note that because this is a diversity [14] case, the

---

13. *See Easter, supra,* 278 S.E.2d at 255.

14. The court is aware that federal question jurisdiction also exists (*see* n. 3); however, even

under both bases of jurisdiction, any federal court would eventually be forced to apply relevant state law to determine whether the Red

court must apply, and has applied, the law of North Carolina to this action. The North Carolina Supreme Court has not had the opportunity to decide, under North Carolina law, whether the Red Cross or any other blood bank: 1) furnishes "professional services"; 2) falls within the definition of "health care provider" as defined in § 90–21.11; or 3) is subject to the 4–year statute of repose in § 1–15(c). Currently, there is no provision under North Carolina law for a federal trial judge to certify unsettled questions of state law to the North Carolina Supreme Court for resolution. Consequently, the court must apply, and indeed has applied, the law as it appears that the North Carolina Supreme Court would rule. *See Makas v. Hillhaven, Inc.*, 589 F.Supp. 736, 739 (M.D.N.C. 1984).

### CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is hereby DENIED.

Cross (or any other blood bank) is subject to a

state statute of limitations.