Bradshaw v. Maiden, 2018 NCBC 97.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

JAMES W. BRADSHAW; CARLA O.
BRADSHAW; RESORT RETAIL
ASSOCIATES, INC.; E.C.
BROADFOOT; CHRISTINA DUNN
CHANDRA; THOMAS F. EGAN;
CHARLES EGGERT; MARK P.
GARSIDE; DR. JAMES J. GREEN,
JR.; ROBERT K. GRUNEWALD;
RONALD HOLMES; DAVID
LAUCK; CURT W. LEMKAU, JR.;
EVAN MIDDLETON; JOSHUA M.
NELSON; CHRISTIAN C. NUGENT;
REGINA H. PAKRADOONI, as
Executrix of the Estate of PETER B.
PAKRADOONI, deceased; FORD
PERRY; MARCELLO G. PORCELLI;
ADAN RENDON; RICHARD H.
STEVENSON; PAUL STOKES;
LAWRENCE J. THEIL; R.
MITCHELL WICKHAM; WILLIAM
H. WILLIAMSON, III; WILLIAM K.
WRIGHT, JR.; ALEX M. WOLF;
CHAFFIN FAMILY LIMITED
PARTNERSHIP; and SOLARIS
CAPITAL LLC,

        Plaintiffs,

v.

STEPHEN E. MAIDEN; MAIDEN
CAPITAL, LLC; and SS&C
TECHNOLOGIES, INC., successor
by merger to SS&C FUND
ADMINISTRATION SERVICES,
LLC (a/k/a SS&C FUND
SERVICES),

        Defendants.

SS&C TECHNOLOGIES, INC.,
successor by merger to SS&C FUND
ADMINISTRATION SERVICES,
LLC,

        Third-Party Plaintiff,

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
14 CVS 14445

**ORDER AND OPINION
AWARDING ATTORNEYS' FEES TO
PLAINTIFFS UNDER RULE 37(b)**

v.

MAIDEN CAPITAL OPPORTUNITY
FUND, LP,

Third-Party Defendant.

1.   **THIS MATTER** is before the Court upon Plaintiffs' Attorneys' Fees and Expenses Application (the "Application") in the above-captioned case.

2.   On May 9, 2018, this Court granted Plaintiffs' Motion for Sanctions (the "Sanctions Motion") under North Carolina Rule of Civil Procedure 37(b) and ordered Defendant SS&C Technologies, Inc. ("SS&C") to pay to Plaintiffs their reasonable expenses, including their reasonable attorneys' fees, directly attributable to SS&C's failure to comply with this Court's May 20, 2016 Order Compelling Production (the "Order Compelling Production") and incurred between the entry of the Order Compelling Production and SS&C's final production of responsive documents.

3.   After considering the Application, the parties' briefs in support of and in opposition to the Application, the arguments of counsel made at the July 24, 2018 hearing held on the Application, and other appropriate matters of record, the Court hereby **ORDERS** SS&C to pay Plaintiffs' reasonable expenses, including attorneys' fees, as set forth herein.

> *Lewis & Roberts, PLLC, by Gary V. Mauney and James A. Roberts, III, for Plaintiffs James W. Bradshaw, Carla O. Bradshaw, Resort Retail Associates, Inc., E.C. Broadfoot, Christina Dunn Chandra, Thomas F. Egan, Charles Eggert, Mark P. Garside, Dr. James J. Green, Jr., Robert K. Grunewald, Ronald Holmes, David Lauck, Curt W. Lemkau, Jr., Evan Middleton, Joshua M. Nelson, Christian C. Nugent, Regina H. Pakradooni, as Executrix of the Estate of Peter B. Pakradooni, deceased, Ford Perry, Marcello G. Porcelli, Adan Rendon, Richard H. Stevenson, Paul Stokes, Lawrence J. Theil, R. Mitchell Wickham, William H.*

*Williamson, III, William K. Wright, Jr., Alex M. Wolf, Chaffin Family Limited Partnership, and Solaris Capital LLC.*

*Alston & Bird, LLP, by Ryan P. Ethridge and Michael A. Kaeding, for Defendant SS&C Technologies, Inc.*

Bledsoe, Chief Judge.

I.

BACKGROUND

4. The Court has previously set out the pertinent facts that led to the Court's decision to impose Rule 37(b) sanctions on SS&C in *Bradshaw v. Maiden*, 2018 NCBC LEXIS 46 (N.C. Super. Ct. May 9, 2018). The Court now briefly recites those facts and describes subsequent, relevant developments in this case.

5. Plaintiffs were investors in the Maiden Capital Opportunity Fund (the "Fund"), a hedge fund through which Defendant Stephen A. Maiden ran an alleged multi-million dollar "Ponzi scheme." *Id.* at *2–3. SS&C served as the Fund's administrator and prepared and delivered accounting and administration information about the Fund to Plaintiffs. *Id.* at *2–3.

6. Plaintiffs filed this lawsuit alleging that the information SS&C provided about the Fund was unsupported and false and thus that SS&C's conduct in providing such information was negligent. (Pl.'s Br. Supp. Att'ys' Fees and Expenses Appl. Lewis & Roberts, PLLC 2 [hereinafter "Pl.'s Br."], ECF No. 189.) Further, Plaintiffs allege that SS&C's negligence was aggravated by reckless or wanton conduct and amounted to gross negligence. (Pl.'s Br. 2.) Plaintiffs seek to prove reckless or wanton conduct by showing that "SS&C had accounting and administration policies that

governed its work" for Plaintiffs and that "SS&C violated or ignored those policies." (Pl.'s Br. 3.)

7. As part of discovery, Plaintiffs requested information from SS&C about SS&C's internal accounting and administration policies, standards, and practices. *Bradshaw*, 2018 NCBC LEXIS 46, at *3–4. After SS&C did not produce any documents within this category, Plaintiffs filed a motion to compel production. *Id.* at *7. At the April 27, 2016 hearing on the motion to compel, SS&C represented to the Court that there were no outstanding documents responsive to Plaintiffs' requests. (Pl.'s Br. 3.)

8. On May 20, 2016, the Court entered the Order Compelling Production and thereby ordered SS&C to produce documents responsive to the following discovery requests:

> 20. All writings, records, and photographs that relate or refer to [SS&C's] policies, standards, and practices from 2006 to 2015 with respect to hedge fund administration.
>
> 21. All writings, recordings, and photographs that relate or refer to [SS&C's] policies, standards, and practices from 2006 to 2015 that apply to [SS&C's] accounting work for hedge funds.
>
> 22. All writings, recordings, and photographs that relate or refer to [SS&C's] policies, standards, and practices from 2006 to 2015 that apply to [SS&C's] record keeping for hedge funds.
>
> . . . .
>
> 35. All writings, recordings, and photographs that relate or refer to [SS&C's] policies, procedures, and standards from 2006 to 2015 for entering into administrative and/or accounting engagements with hedge funds.

(Pl.'s Br. Supp. Mot. Sanctions Ex. 2, at 8–9, 11, ECF No. 128.2.) SS&C did not produce documents responsive to these requests. (Pl.'s Br. 3.)

9. Following the Order Compelling Production, Plaintiffs continued to search for documents responsive to their discovery requests. Plaintiffs eventually learned of several categories of policy documents that SS&C had failed to produce, including policy and procedure manuals generated by certain SS&C business units and SAS 70 and SOC-1 reports, some of which SS&C eventually provided to Plaintiffs. *Bradshaw*, 2018 NCBC LEXIS 46, at *11–12. Plaintiffs then began developing a record that would provide credible support for a sanctions motion under Rule 37. (Pl.'s Br. 4.)

10. Plaintiffs conferred with SS&C concerning the existence of unproduced documents and, upon receiving an unsatisfactory response, submitted a Business Court Rule ("BCR") 10.9 e-mail summary to the Court explaining the discovery dispute between the parties. *Bradshaw*, 2018 NCBC LEXIS 46, at *24–25. After reviewing the parties' respective BCR 10.9 submissions, the Court entered an order establishing a briefing schedule for a formal sanctions motion by Plaintiffs. (Scheduling Order and Notice Hr'g, ECF No. 123.) Plaintiffs filed their formal Sanctions Motion, and both sides submitted timely briefs.

11. The Court held a hearing on Plaintiffs' Sanctions Motion on September 22, 2017. At that hearing, SS&C acknowledged the existence of the unproduced documents Plaintiffs had identified but argued that these documents were not responsive to Plaintiffs' discovery requests.

12. The Court disagreed with SS&C's argument and found that additional unproduced documents existed that were responsive to Plaintiffs' discovery requests and the Order Compelling Production. *See Bradshaw*, 2018 NCBC LEXIS 46, at *21. The Court ordered SS&C to produce these documents and to then certify that its production was complete. *See id.* at *25–26. The Court took the remainder of the Sanctions Motion under advisement. *See id.* On October 12, 2017, SS&C filed a certification (the "Certification") stating that all documents ordered to be produced had been produced with one "minor exception." (Certification Compliance Ct.'s Sept. 22, 2018 Order Produc. Docs. 3, ECF No. 147.)

13. Following the Certification, the parties engaged in repeated disputes and conferences regarding the outstanding documents responsive to Plaintiffs' discovery requests. (Pl.'s Br. 6.) In particular, Plaintiffs contested the Certification, leading to the Court's entry of a December 15, 2017 order directing Plaintiffs to send SS&C lists of documents that Plaintiffs believed SS&C was still required to produce. (Order Confer and Notice Status Conference, ECF No. 157.) Pursuant to subsequent Court order, the parties have submitted regular formal status reports to the Court regarding the parties' efforts to reach discovery agreements concerning SS&C's remaining production. (*See, e.g.*, Joint Report Concerning Status Doc. Disc. 1, ECF No. 177.) Plaintiffs submit that SS&C is still producing documents that should have been produced in 2016. (Pl.'s Br. 6.)

14. The Court entered its Order and Opinion on Plaintiffs' Sanctions Motion on May 9, 2018. In addition to memorializing its oral order directing SS&C to produce

outstanding documents, the Court determined that SS&C had violated the Order Compelling Production, that SS&C's violation was not substantially justified, and that, as an appropriate sanction for SS&C's violation, SS&C would be required to "pay to Plaintiffs their reasonable expenses, including their reasonable attorneys' fees, directly attributable to SS&C's failure to comply with the Order Compelling Production that were incurred between the entry of the Order Compelling Production and SS&C's final . . . production." *Bradshaw*, 2018 NCBC LEXIS 46, at \*25–26. The Court set a briefing schedule for the parties to address the issue of Plaintiffs' reasonable expenses, including reasonable attorneys' fees. *Id.* at \*27–28.

15.   Plaintiffs submitted their Application to the Court on June 1, 2018. The Application consists of a brief, an affidavit of Plaintiffs' counsel, and a statement of fees and expenses in the form of a spreadsheet documenting all tasks and times for which Plaintiffs request attorneys' fees and expenses. (Pl.'s Br. 1; Mauney Aff. ¶ 8, ECF No. 189.1; Mauney Aff. Ex. 1, at 1–4, ECF No. 189.1.) Plaintiffs' spreadsheet also contains the date of the hours billed, the attorney or paralegal conducting the respective task, a brief description of the task, the hours spent on the task, the rate charged for that task, and the total amount charged for the time and task. (Mauney Aff. Ex. 1, at 1.) Plaintiffs' counsel charged a rate of $450.00 per hour for partner time and $125.00 per hour for paralegal time. (Mauney Aff. ¶ 11.) Plaintiffs' counsel affirms by affidavit that the statement of fees and expenses is accurate and that the rates charged are reasonable and standard within metro areas in North Carolina for like services. (Mauney Aff. ¶¶ 5–6.)

16.    Plaintiffs also request an award of their other expenses directly attributable to SS&C's discovery violation, including the cost of materials used in the hearing on Plaintiffs' Sanctions Motion ($3,010.00), travel expenses related to the sanctions hearing ($187.25), and the sanctions hearing transcript fee ($330.00).  (Mauney Aff. ¶ 12.)

17.    In response to Plaintiffs' Application, SS&C submitted an annotated fee schedule objecting to and adjusting Plaintiffs' billing entries.  (Annotated Fee Schedule 2, ECF No. 192.1.)  SS&C's spreadsheet separates the billing entries into three categories: (i) entries that SS&C contends are not compensable because they are not "directly attributable to SS&C's failure to comply with the Order" and would have occurred regardless of SS&C's compliance with the Order Compelling Production; (ii) entries that should be discounted because they are vague or "block-billed"; and (iii) entries that are billed excessively.  (Annotated Fee Schedule 2.) SS&C also requests that the Court reduce Plaintiffs' rates by 20% for all time allowed. (Annotated Fee Schedule 2.)

18.    In sum, Plaintiffs request $187,206.25 in attorneys' fees for an asserted 486.25 hours of work performed by Plaintiffs' counsel and counsel's paralegals and $3,527.25 in expenses, making for a total request of $190,733.50 in fees and expenses. (Mauney Aff. ¶ 13.)  Defendants dispute portions of Plaintiffs' attorneys' fees request, argue that the award for attorneys' fees should be reduced to $42,830.00, and thus ask the Court to award total fees and expenses of $46,357.25.  (Annotated Fee Schedule 13.)

II.

LEGAL STANDARD

19. In North Carolina, attorneys' fees are only recoverable "if such a recovery is expressly authorized by statute." *Robinson v. Robinson*, 210 N.C. App. 319, 336, 707 S.E.2d 785, 797 (2011) (internal quotation marks omitted). Rule 37(b)(2) authorizes an award of attorneys' fees, in addition to other possible sanctions, when a party "fails to obey an order to provide or permit discovery." N.C. R. Civ. P. 37(b)(2). In such circumstances, "the court shall require the party failing to obey the order to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified." *Id.*

20. A trial court's determination as to the amount of attorneys' fees to be awarded is left to the court's discretion and "will not be disturbed without a showing of manifest abuse of [that] discretion." *Bryson v. Cort*, 193 N.C. App. 532, 540, 668 S.E.2d 84, 89 (2008). The trial court "may also in its discretion consider and make findings on the services expended by paralegals . . . if, in [the trial court's opinion], it is reasonable to do so." *United Labs., Inc. v. Kuykendall*, 335 N.C. 183, 195, 437 S.E.2d 374, 382 (1993) (alteration in original) (internal quotation marks omitted).

21. Generally, an award of attorneys' fees requires "that the trial court enter findings of fact as to the time and labor expended, skill required, customary fee for like work, and experience or ability of the attorney based on competent evidence." *Couch v. Private Diagnostic Clinic*, 146 N.C. App. 658, 672, 554 S.E.2d 356, 366 (2001). When attorneys' fees are awarded as a sanction, there must be "findings to

explain . . . the appropriateness of the sanction and, if it involves a monetary amount, how the court arrived at that figure." *Dunn v. Canoy*, 180 N.C. App. 30, 50, 636 S.E.2d 243, 255–56 (2006).

## III.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

22. Rule 37(b)(2) requires that the Court's award of expenses, including attorneys' fees, be reasonable. N.C. R. Civ. P. 37(b)(2). The reasonableness of attorneys' fees in this State "is governed by the factors found in Rule 1.5 of the Revised Rules of Professional Conduct of the North Carolina State Bar." *Ehrenhaus v. Baker*, 216 N.C. App. 59, 96, 717 S.E.2d 9, 33 (2011).

23. "The factors to be considered in determining whether a fee is clearly excessive" under Rule 1.5(a) of the Revised Rules of Professional Conduct include:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

N.C. Rev. R. Prof. Conduct 1.5(a).

24. The Court first analyzes the reasonableness of the rate charged by Plaintiffs' counsel and the fee customarily charged in this locality for similar legal services. Plaintiffs' counsel's affidavit avers that the charged rates of $450.00 per hour for partners and $125.00 per hour for paralegals is customary and reasonable "for business litigation in metro areas throughout North Carolina[.]"[1] (Mauney Aff. ¶ 5.) This Court has previously surveyed North Carolina cases and "conclude[ed] that a typical and customary hourly rate charged in North Carolina for complex commercial litigation . . . ranges from $250 to $475." *In re Newbridge Bancorp S'holder Litig.*, 2016 NCBC LEXIS 91, at *46–47 (N.C Super. Ct. Nov. 22, 2016); *see also In re Krispy Kreme Doughnuts, Inc., S'holder Litig.*, 2018 NCBC LEXIS 61, at *21 (N.C. Super. Ct. June 20, 2018) (finding an implied rate of $300 per hour to be "well within the standard range" for complex civil litigation fees); *In re Pike Corp. S'holder Litig.*, 2015 NCBC LEXIS 95, at *22–23 (N.C. Super. Ct. Oct. 8, 2015) (finding hourly rates of $550, $375, and $250 to be within, but at the higher end of, reasonable fees for complex business litigation in North Carolina); *In re PokerTek Merger Litig.*, 2015 NCBC LEXIS 10, at *23–24 (N.C. Super. Ct. July 6, 2015) (concluding rates "in the range of $250–$450 per hour" were "reasonable and clearly not excessive"). The Court

---

[1] SS&C disputes Plaintiffs' contention that the hourly rates charged are reasonable and asserts that there is no evidence in the record to support this assertion besides Plaintiffs' counsel's affidavit, which SS&C argues the Court should disregard. SS&C does acknowledge, however, that Plaintiffs' counsel's affidavit addresses the reasonableness of the charged rates, and SS&C cites no evidence to contradict the affidavit testimony. The Court thus disagrees with SS&C's argument and will consider the affidavit. *See WFC Lynnwood I LLC v. Lee of Raleigh, Inc.*, __ N.C. App. __, 2018 N.C. App. LEXIS 564, at *17–18 (June 5, 2018) (remanding for further findings on attorneys' fee award where plaintiffs' counsel's affidavit provided evidence of charged rates, time billed, and attorney experience but failed to include a statement with respect to comparable rates in the field of practice).

takes judicial notice of such holdings and of the customary hourly rates of local attorneys of the same experience providing similar services in the Charlotte, North Carolina area. *See Simpson v. Simpson*, 209 N.C. App. 320, 328, 703 S.E.2d 890, 895 (2011) (stating that a court "considering a motion for attorneys' fees . . . is permitted, although not required, to take judicial notice of the customary hourly rates of local attorneys performing the same services and having the same experience"). This Court and other courts have also found comparable paralegal rates to be customary and reasonable. *See SilverDeer St. John Equity Partners I LLC v. Kopelman*, No. 5:11-CV-00095-JG, 2012 U.S. Dist. LEXIS 166849, at *6 (E.D.N.C. Nov. 21, 2012) (awarding paralegal fees at a rate of $100 per hour); *Se. Air Charter, Inc. v. Stroud*, 2015 NCBC LEXIS 82, at *6–7 (N.C. Super. Ct. Aug. 17, 2015) (finding paralegal rates between $100 and $125 per hour to be reasonable and appropriate).

25.    Based on Plaintiffs' counsel's affidavit, the previous holdings of this Court, and the Court's knowledge of the hourly rates of local attorneys providing similar services in this locality, the Court finds that Plaintiffs' billed rate of $450.00 per hour for attorney work and $125.00 per hour for paralegal work is reasonable and is a "fee customarily charged in [this] locality for similar legal services." N.C. Rev. R. Prof. Conduct 1.5(a)(3). Therefore, the Court will apply the rate of $450.00 per hour for attorneys and $125.00 per hour for paralegals in calculating Plaintiffs' award.

26.    The Court next evaluates the time and labor expended by Plaintiffs' counsel. The Court considers this factor in light of the Court's decision to award attorneys' fees "directly attributable to SS&C's failure to comply with the Order Compelling

Production that were incurred between the entry of the Order Compelling Production and SS&C's final . . . production." *Bradshaw*, 2018 NCBC LEXIS 46, at *26.

27. SS&C disputes most of the time Plaintiffs' counsel billed after October 2017, arguing that the majority of the tasks associated with this billed time would have been undertaken regardless of SS&C's compliance with the Order Compelling Production. The Court agrees.

28. The majority of the time periods billed after October 2017 relate to counsel's efforts to parse through the large volume of discoverable material SS&C turned out to possess in order to narrow the final production SS&C was required to make. (Mauney Aff. Ex. 1, at 3–4; *see e.g.*, Joint Report Concerning Status Doc. Disc. 1; Order Meet and Confer 2, ECF No. 149.) This process would have taken place regardless of SS&C's sanctionable conduct. Whether SS&C began production after the Court's Order Compelling Production or following the Court's imposition of sanctions, Plaintiffs' and SS&C's counsel would still have needed to agree upon a way to manage what proved to be a voluminous universe of documents responsive to Plaintiffs' discovery requests. SS&C's previous conduct may have elevated tensions between counsel, but the need to engage in this work—determining which business units' files SS&C should search, what search terms should be used for e-mail searches, etc.— was not directly attributable to SS&C's discovery violation. Therefore, most of Plaintiffs' billed time after October 2017 will not be included in the Court's award of attorneys' fees, except as otherwise provided in this Order.

29. As to Plaintiffs' allowable post-October 2017 time, the Court will include in its award the time billed on Plaintiffs' statement of fees and expenses (i) from December 21, 2017 through December 28, 2017, and (ii) on February 5, 2018. Plaintiffs' counsel described this time as time spent working on matters related to the Court's then-under-consideration decision to impose sanctions. (Mauney Aff. Ex. 1, at 3–4.) The Court finds, in the exercise of its discretion, that this time should be considered directly attributable to SS&C's discovery violation and will thus include it in the Court's award of attorneys' fees.

30. Plaintiffs' billed time before or during October 2017 was primarily for three tasks: drafting Plaintiffs' Rule 10.9 summary, drafting Plaintiffs' Rule 37 sanctions brief, and preparing for the September 22 hearing on Plaintiffs' Sanctions Motion. (Mauney Aff. Ex. 1, at 1–2.) SS&C contends that the time billed for these tasks was excessive and should be reduced between 50–75%. (Annotated Fee Schedule 3–9.)

31. In total, Plaintiffs request 31 hours of compensable attorney work for drafting the Rule 10.9 summary. (Mauney Aff. Ex. 1, at 1.) The Court finds, in its discretion and having reviewed the Rule 10.9 summary, that 31 hours is an excessive amount of time for that work and will adjust this amount to 20 hours.

32. Plaintiffs request a total of 65 hours of compensable work for drafting Plaintiffs' sanctions brief. (Mauney Aff. Ex. 1, at 1–2.) The Court finds, in its discretion and having reviewed the sanctions brief, that 65 hours of work on the sanctions brief is an excessive amount of time for that work and will adjust this

amount to 45 hours. The Court deducts the full amount of this reduction from the hours Plaintiffs' counsel billed in relation to Plaintiffs' sanctions brief.

33. Plaintiffs request 91 hours of compensable work for preparation for the sanctions hearing. (Mauney Aff. Ex. 1, at 2.) The Court finds, in its discretion, that this amount of time is excessive and will adjust this amount to 45 hours. The Court will deduct the full amount of this reduction from the hours billed by Plaintiffs' counsel.

34. Plaintiffs further request an additional 13 hours of compensable work billed by paralegals in late July and early August 2017 for work "relative" to their Rule 37 motion and brief and/or the sanctions hearing. (Mauney Aff. Ex. 1, at 1.) As with the billed time attributed solely to Plaintiffs' brief or the sanctions hearing, the Court finds, in its discretion, that this amount of additional mixed time is excessive and will adjust this amount to 6 hours.

35. In its discretion, the Court will also exclude the first two billed entries on Plaintiffs' statement of fees and expenses, a total of 9.5 hours, for time spent studying the SAS 70 reports SS&C turned over to Plaintiffs on or before July 11, 2017. Plaintiffs' counsel would have reviewed these discovery materials regardless of when they were disclosed to Plaintiffs and regardless of their importance to Plaintiffs' eventual motion for Rule 37(b) sanctions. The Court will count these initial entries as the time Plaintiffs' counsel would have spent reviewing the SAS 70 reports regardless of SS&C's discovery violation.

36. The Court finds the remainder of hours billed for work before or during October 2017 to be reasonable. These hours will therefore be included in Plaintiffs' award.

37. Considering the other portion of Revised Rule of Professional Conduct 1.5(a)'s first factor, "the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly," the Court finds that Plaintiffs' counsel's work was challenging and required a high degree of skill and experience. Reviewing the SAS 70 and SOC-1 reports that SS&C produced to Plaintiffs before Plaintiffs' decision to move for sanctions, understanding the contents of those reports, and building a case for sanctions based upon those reports required experience and specialized knowledge. The Court concludes that this factor merits the award of attorneys' fees ordered herein.

38. With regard to the fourth factor of Revised Rule of Professional Conduct 1.5(a), the "amount involved and the results obtained," SS&C argues that the documents Plaintiffs have obtained through their Sanctions Motion and the following drawn-out discovery process are of little help to Plaintiffs' claims in this case. SS&C contends that Plaintiffs' fee request is excessive "compared to the marginal benefits [Plaintiffs] accomplished via their motion" and should therefore be reduced. (Def.'s Opp'n Pls.' Appl. Att'ys' Fees and Expenses 5, ECF No. 192.) The Court is not persuaded by this argument.

39. While Plaintiffs' overall success in this litigation remains to be seen, Plaintiffs were successful with respect to their goals in bringing their Sanctions

Motion. The Court found that SS&C had violated the Order Compelling Production and concluded that sanctions, in the form of awarded attorneys' fees, should be imposed. *Bradshaw*, 2018 NCBC LEXIS 46, at \*26. The Court also ordered SS&C to produce the outstanding documents responsive to Plaintiffs' discovery requests. *Id.* Plaintiffs thus succeeded in obtaining the discovery they sought as well as sanctions. "The purpose of . . . discovery . . . is to allow the parties access to and facilitate the disclosure of relevant, nonprivileged information 'so as to permit the narrowing and sharpening of basic issues and facts to go to trial.'" *Analog Devices, Inc. v. Michalski*, 2006 NCBC LEXIS 16, at \*12 (N.C. Super. Ct. Nov. 1, 2006) (quoting *Willoughby v. Wilkins*, 65 N.C. App. 626, 642, 310 S.E.2d 90, 100 (1983)). In obtaining the discoverable materials SS&C withheld, Plaintiffs accomplished this purpose. The Court thus concludes that this factor weighs in favor of the Court's award of attorneys' fees.

40. Considering Revised Rule of Professional Conduct 1.5(a)'s seventh factor, "the experience, reputation, and ability of the lawyer or lawyers performing the services," the Court finds that the three attorneys who billed Plaintiffs for time in relation to this matter have significant experience in complex business litigation and have been practicing law in North Carolina for at least twenty years. (Mauney Aff. ¶¶ 2, 5.) These attorneys have proven themselves very able in this litigation while handling complicated legal questions and a large universe of discoverable documents. The Court concludes that this factor weighs in favor of the award of attorneys' fees ordered herein.

41. Finally, the Court has considered the remaining factors of Revised Rule of Professional Conduct 1.5(a)—to the extent they can be applied to an award of attorneys' fees in the context of discovery sanctions—and finds that the attorneys' fees awarded herein are reasonable in light of these factors as well.

42. Therefore, after making the above-described adjustments to Plaintiffs' submitted statement of fees and expenses, the Court concludes that Plaintiffs shall be awarded attorneys' fees in the reasonable amount of $113,168.75 pursuant to Rule 37(b)(2).

43. The Court further finds, in light of SS&C's decision not to contest the expenses requested by Plaintiffs, (Annotated Fee Schedule 13), and after a review of those expenses, that Plaintiffs' requested expenses are reasonable. Therefore, the Court concludes that Plaintiffs' requested expenses, in the amount of $3,527.25, shall be awarded pursuant to Rule 37(b)(2).

44. Combining the above amounts, the Court concludes that SS&C shall pay Plaintiffs' reasonable attorneys' fees and expenses in the total amount of $116,696.00.

IV.

CONCLUSION

45. **WHEREFORE**, the Court, in the exercise of its discretion, hereby **ORDERS** SS&C to pay Plaintiffs' reasonable expenses, including attorneys' fees, in the amount of $116,696.00.

**SO ORDERED**, this the 20th day of September, 2018.


/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Chief Business Court Judge