**John LOCKE, Plaintiff–Appellant,**

v.

**Gary VANDERARK, M.D.,**
**Defendant–Appellee.**

**No. 90CA0099.**

Colorado Court of Appeals,
Div. V.

April 9, 1992.

Rehearing Denied June 11, 1992.

Certiorari Denied Jan. 11, 1993.

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const., art. VI, § 5(3),

and § 24–51–1105, C.R.S. (1988 Repl.Vol. 10B).

Eugene Deikman, P.C., Eugene Deikman, Denver, for plaintiff-appellant.

Pryor, Carney & Johnson, P.C., Susan T. Smith, Elizabeth C. Moran, Englewood, for defendant-appellee.

Opinion by Judge REED.

In this medical malpractice action, plaintiff, John Locke, appeals from the judgment entered upon a jury verdict in favor of defendant, Gary Vanderark, M.D. We affirm.

In the months of February, September, and October 1979, the defendant, a neurosurgeon, performed ventricular shunt surgeries to alleviate plaintiff's condition of hydrocephalus. The purpose of these operations was to drain excessive cerebrospinal fluid from the cranial area. This was to be accomplished by the placement of a shunt catheter through the right side of the brain. Such a catheter allows drainage of the fluid through other catheters for ultimate dissipation into the abdominal area.

After the third operation, plaintiff suffered hemiparesis to the left side of his body. He thereafter brought this action charging, *inter alia*, that defendant was negligent during the operative procedures. The issues of negligence and causation of plaintiff's injuries were disputed in the evi-

dence and were submitted to the jury. It found in favor of the defendant.

## I.

Plaintiff first contends that the trial court erred in limiting the scope of opinion testimony by plaintiff's experts relative to damages. We disagree.

### A.

#### Testimony of Plaintiff's Psychiatrist

■ At trial, plaintiff called a board certified psychiatrist who had treated plaintiff in 1979 at Bethesda Psychiatric Hospital in Denver for neuropsychological and organic brain disorders. The psychiatrist testified not as plaintiff's expert witness, but in her capacity as plaintiff's treating psychiatrist at Bethesda.

While under the psychiatrist's care, plaintiff submitted to a program of psychological testing to assess the extent of his higher cortical functions following a history of hydrocephalus and surgery. Based upon her observation of plaintiff and review of reports prepared by others pertaining to his psychological condition, the psychiatrist stated that plaintiff suffered from profound feelings of hopelessness and had great anxiety about deficits in his cognitive abilities.

The psychiatrist was not permitted to testify, however, concerning whether the long-term result of the hydrocephalus was a lowered IQ or whether a subsequent ventriculostomy performed in 1986 had restored plaintiff's intellectual functioning.

Plaintiff argues that he was prejudiced and denied a fair trial when the trial court precluded the psychiatrist from giving additional opinion testimony regarding the causal connection between hydrocephalus and his lowered IQ. Defendant contends that the trial court properly precluded the psychiatrist from presenting additional opinion testimony since such had not been disclosed pursuant to the C.R.C.P. 121 § 1–18. *Cf.* C.R.C.P. 16 (effective as to cases filed on or after April 1, 1988). We agree with defendant.

C.R.C.P. 121 § 1–18 required parties retaining the services of an expert witness to file a trial data certificate setting forth the subject matter upon which the expert is expected to testify, the expert's conclusions and opinions and the basis thereof, and the expert's qualifications.

■ Failure to disclose the identity of experts or their opinions, or failure to supplement the expert's responses to discovery when additional information becomes known, can result in the imposition of sanctions, including an order limiting the scope of an expert's testimony at trial. *See Daniels v. Rapco Foam, Inc.*, 762 P.2d 717 (Colo.App.1988).

Whether such sanctions should be imposed is a matter resting within the sound discretion of the trial court. Exercise of that discretion will not be disturbed upon review absent a clear showing that it has been abused. *Overland Development Co. v. Marston Slopes Development Co.*, 773 P.2d 1112 (Colo.App.1989).

Here, there can be no question but that plaintiff failed to disclose the psychiatrist's opinion regarding the association between IQ and the hydrocephalic condition affecting plaintiff. The record also reveals that plaintiff did not timely disclose the psychiatrist's qualifications to render such an opinion. Moreover, despite the fact that interrogatories were propounded to plaintiff requesting the identity of expert witnesses and disclosure of their opinions, plaintiff responded by stating that the opinions of the psychiatrist and the basis therefor were disclosed in her deposition. Hence, it was proper for the trial court to restrict the psychiatrist's testimony to opinions expressed in her deposition, and any opinion expressed in addition to those in the deposition was properly excluded.

### B.

#### Testimony of Neurosurgeon

■ Plaintiff also argues that the trial court erred in precluding plaintiff's expert from testifying regarding damages other than those related to hemiparesis. Defendant contends that the expert's testimony

was properly limited to the subject matter of his pre-trial endorsement and the opinions expressed in his deposition. Again, we agree with the defendant.

A board certified neurosurgeon testified as an expert witness for plaintiff to the effect that a partial occlusion of the ventricular shunt occurred after the first surgery, causing re-dilation of the ventricle and development of increased intercranial pressure. This malfunctioning of the shunt necessitated shunt revision procedures in September and October of 1979.

The neurosurgeon opined, based upon a reasonable degree of medical certainty, that repeated passes of the shunt which took place during the October surgery caused vascular left-sided hemiparalysis. In the neurosurgeon's opinion, this placement further exacerbated the original surgery injury with consequent onset of neurologic deficits.

The neurosurgeon was also *prepared* to testify that, in his opinion, defendant was negligent by failing to revise the ventricular end of the shunt during the course of the September surgery. According to the neurosurgeon, this had the long-term result of causing brain deterioration because of hydrocephalus.

Plaintiff did not formally endorse the neurosurgeon as an expert, pursuant to C.R.C.P. 121 § 1–18, because he was a substitute for another medical witness previously designated to serve as plaintiff's expert on issues of causation and damages relating to plaintiff's hemiparesis.

The first notice given of the neurosurgeon's opinion was in answer to defendant's interrogatories which requested the identity and opinions of plaintiff's expert witnesses. In response, a copy of a report giving the neurosurgeon's preliminary evaluation of the case and summarizing his opinions was provided to defendant's counsel.

The report stated that the third operative procedure performed on plaintiff in October 1979 utilized improper techniques and caused plaintiff's hemiparesis. It indicated further that at the time of the revision of the shunt, in September of 1989, a new needle track should have been made at the previous operative site for later insertion of a ventricle catheter.

The report, however, did not indicate that the shunt revision procedure performed in September contributed to damages other than hemiparesis. Not until trial did plaintiff's counsel inform defense counsel and the court that the neurosurgeon's specific opinion would extend to additional damages relating to the September surgery.

At trial, defendant moved to limit the neurosurgeon's opinion testimony to that which had been disclosed in the interrogatories. The trial court granted defendant's motion, finding that to allow the undisclosed opinion would violate C.R.C.P. 121 § 1–18.

Plaintiff maintains, however, that it was defendant's failure to depose the witness adequately which resulted in the non-disclosure of his additional opinion. According to plaintiff, the doctor told defendant in his deposition that he was prepared to testify concerning the reasonableness and necessity of bills for treatment of depression, inability to concentrate, and lowered IQ.

The purpose of C.R.C.P. 121 § 1–18 was to allow litigants the benefit of timely ascertaining and relying upon the opinions of experts retained by their adversaries. The rule properly contemplated limiting the scope of an expert's testimony to those opinions actually revealed during discovery. *See Daniels v. Rapco Foam, Inc., supra; Conrad v. Imatani,* 724 P.2d 89 (Colo.App.1986). The party retaining an expert witness has the obligation to keep abreast of the opinions which may be expressed at trial, and the court should not view favorably late disclosure of new opinions.

The question then is whether the neurosurgeon's opinion that plaintiff had damages other than hemiparesis which were attributable to negligence in performing the September 1979 shunt revision went beyond the fair scope of his earlier disclosed opinion that trauma caused by the October 1979 procedure was manifested by hemiparesis with incidental effects caused

by the September 1979 surgery. While there may be no question that the revised opinion regarding damages caused by the September surgery is consistent with his original opinion, it is decidedly more specific, and the implications of such an opinion may be profoundly different from the standpoint of damages. We conclude, therefore, that the trial court did not err in ruling that the tardily disclosed opinion was beyond the scope of discovery, and thus, we find no abuse of discretion by the court in precluding testimony regarding same at trial.

### C.

In addition, even if we assume the trial court erred by restricting the scope of opinion testimony relating to plaintiff's neuropsychological damages, such error was harmless since the jury found in favor of defendant on the issue of liability. *Gray v. Houlton*, 671 P.2d 443 (Colo.App.1983).

### II.

Plaintiff contends that the trial court erred in permitting the defense to cross-examine his expert neurosurgeon witness concerning the fact that he had been sued for malpractice on at least six occasions. We agree, but conclude that the error here does not warrant reversal.

In demonstrating the qualifications of his expert witness, the plaintiff established that a substantial portion of the witness' practice involved employment as an expert or consultant in medical malpractice cases involving neurosurgeons. He stated that he had given testimony in a number of such cases as an expert witness.

During cross-examination, however, defense counsel was permitted to elicit from the witness that he had been sued for medical malpractice on at least five occasions and for defamation on one occasion. Testimony as to the defamation case was elicited without objection. Defendant argued to the trial court that evidence concerning the other cases was relevant to the witness' credibility as indicating bias.

The trial court agreed with defendant and, over plaintiff's objection, allowed cross-examination to proceed with only the admonition that the fact of the malpractice suits be revealed and not the specifics. The record contains no indication that the malpractice suits against the witness involved the medical procedures in question here.

Both before and after adoption of the Colorado Rules of Evidence, the rule in this jurisdiction has been that wide latitude should be allowed in cross-examination of a witness but that counsel should not be permitted to inquire concerning subjects which are totally unrelated to resolution of the issues in the trial. *See Webb v. People*, 97 Colo. 262, 49 P.2d 381 (1935); *People v. Diaz*, 644 P.2d 71 (Colo.App.1981).

We view that rule as being of particular significance here because inquiry into unrelated litigation requires, in fairness, that the witness be permitted to explain the nature, circumstances, and the decision, if any, in each case to rehabilitate the challenged credibility. Conversely, if any case was settled, explanation would be necessary regarding the reasons for and terms of any compromise agreement. As a result, this evidence would divert the jury's attention from the dispositive issues in the case and trial preparation and cost could be extensive. In short, the "sideshow would take over the circus." *See People v. Taylor*, 190 Colo. 210, 545 P.2d 703 (1976).

We conclude that the record here does not support the trial court's ruling that this line of inquiry was relevant to the witness' bias or credibility. *See Laughridge v. Moss*, 163 Ga.App. 427, 294 S.E.2d 672 (1982). In so doing, we recognize that courts in other jurisdictions have, for the purposes of credibility, permitted this type of cross-examination. *See Navarro de Cosme v. Hospital Pavia*, 922 F.2d 926 (1st Cir.1991); *Willoughby v. Wilkins*, 65 N.C.App. 626, 310 S.E.2d 90 (1983).

Nevertheless, we conclude that reversal is not warranted in this case because we do not view this cross-examination as having prejudiced the jury. *See* CRE 103(a); *Kerby v. Flamingo Club, Inc.*, 35

Colo.App. 127, 532 P.2d 975 (1975). The record discloses that the references made to the malpractice cases was limited during the cross-examination itself and that the issue was not discussed in closing argument. Most importantly, though, we think harmless error is indicated by the record as a whole which reflects that the neurosurgeon was effectively impeached on a number of other topics relating to his credibility.

Specifically, the expert expressed a new and different opinion as to defendant's malpractice at trial that had not been disclosed during the course of his deposition, notwithstanding questions designed to elicit all of the expert's views. Moreover, other cross-examination established that the expert could not recall at his deposition ever having testified against a particular physician in another malpractice case, even though he was personally acquainted with that individual and even though this physician had filed suit against the expert for defamation.

Two other examples strike us as persuasive that the challenged cross-examination was harmless. The expert testified as to having been removed from a teaching position, but stated that he was reinstated thereafter. However, a physician called by defendant refuted this, stating that the expert had not been reassigned to the teaching staff.

Also, the expert was forcefully cross-examined on an opinion expressed in another case which appears to contradict directly his conclusions of neurosurgical negligence relating to the ventricular shunt procedure at issue in this case. Finally, the record reflects substantial, competent evidence which supports the verdict of the jury. Thus, we conclude that the error was harmless.

### III.

Finally, we reject plaintiff's contention the trial court erred in admitting various medical and employment records.

In view of plaintiff's stipulation both to the authenticity of these documents and to the fact that they constituted records kept in the regular course of business, there could be no error committed by their admission into evidence. *Bates & Sons, Inc. v. Great Western Ry. Co.*, 158 Colo. 259, 406 P.2d 98 (1965). Furthermore, because no contemporaneous objection on the grounds of relevancy was made at trial, the issue is not properly preserved for our review. *See Russell v. First American Mortgage Co.*, 39 Colo.App. 360, 565 P.2d 972 (1977).

Error is also claimed by the admission in evidence of other documents provided by a hospital to which plaintiff did object, presumably on relevancy grounds, stating that these made reference to medical findings not otherwise supported by the evidence, *e.g.*, that plaintiff had, at one point, been diagnosed with migraine headaches. However, plaintiff does not direct us to specific parts of the record in which that diagnosis was made. Accordingly, we do not disturb the trial court's ruling that the jury was entitled to consider the content of these records concerning issues to which they pertained. *Mauldin v. Lowery*, 127 Colo. 234, 255 P.2d 976 (1953).

### IV.

Plaintiff's contention that the jury should have been instructed concerning the duties of parties to supplement discovery responses is without merit.

Judgment affirmed.

RULAND, J., concurs.

DUBOFSKY, J., dissents.

JUDGE DUBOFSKY dissenting.

I respectfully dissent.

I concur with the majority's opinion except its conclusion that the admission of the prior malpractice claims was harmless error.

I agree that one of the dangers of permitting cross-examination on the previous malpractice claims against plaintiff's expert is that, as he attempts to justify his position as to those claims, each claim would have the potential of becoming a trial within a trial. It is difficult enough

for the fact-finder to understand the issues in a complicated malpractice case without adding additional medical issues from another case to this burden.

There are, however, several other reasons why the prior claims against the expert should not have been admitted into evidence.

*Claims* of poor prior medical practice are merely accusations and do not prove malpractice. Before a party should be permitted to impugn the credibility of an expert witness because of prior bad acts of malpractice, such party should, at a minimum, be required to demonstrate the claims were found to be valid by a judge or jury. *See People v. King*, 179 Colo. 94, 498 P.2d 1142 (1972).

Only a small percentage of malpractice claims brought against physicians results in verdicts adverse to the physicians. Metzloff, *Researching Litigation: The Medical Malpractice Example*, 51 Law & Contemp.Probs. 199 (Autumn 1988). Hence, the mere fact that a physician has "been sued" tells very little about such physician's credibility.

Furthermore, even if the expert witness has been found liable for malpractice in a specific prior incident, it is doubtful that such finding is relevant either to the credibility of the physician or to the accuracy of his testimony in the subsequent but unrelated trial.

In my view, the use of cross-examination to reveal a witness' collateral "bad acts" is becoming all too prevalent. Rather than meeting directly the testimony and evidence of the other side, the parties are attacking the other party's and witnesses' collateral "wrong doings." *See* Dolan, *Rule 403: The Prejudice Rule in Evidence*, 49 S.Cal.L.Rev. 220 (1976).

To admit collateral evidence of unrelated prior bad acts is to alter the essential purpose of a trial from resolving the dispute on the direct evidence into a morality play in which the jury decides whether the parties and their witnesses are good or bad people. Such is not the proper purpose of a trial, and the courts should be on guard to prevent it.

Here, the other members of the panel and I agree that the cross-examination on this issue was not proper. Where we disagree is in whether it was prejudicial error.

In my view, contrary to the conclusion of the majority here, there is at least a reasonable possibility that the error of admitting the prior malpractice claims affected the outcome of the case and, thus, the substantial rights of the parties.

In concluding that cross-examination about the prior malpractice claims against the expert was harmless, the majority relies primarily on other collateral information used to impeach him. In my view, reliance upon the expert's asserted lack of credibility is improper. Unlike this case, only in a rare situation should the harmless error analysis be predicated upon an appellate court's view that the testimony of a key expert is not credible. *See* R. Traynor, *The Riddle of Harmless Error* (1970).

Both the "conflict" in the testimony as to the expert's position at the medical school and as to his alleged prior inconsistent opinion are insufficient in my view to resolve the issue. Furthermore, I am not even convinced from this record that there is a direct conflict of evidence on these issues, but in any event, it ill behooves this court to choose defendant's witnesses' testimony over the expert's and in turn to say these discrepancies make his opinion on the merits of the case also incredible.

In a medical malpractice case, it is generally incumbent upon the plaintiff to prove by expert testimony that defendant departed from the required standard of care. *Smith v. Curran*, 28 Colo.App. 358, 472 P.2d 769 (1970). Because a medical expert's opinion on standard of care, causation, and damages is of such special importance in a medical malpractice case, the improper and prejudicial impeachment of the expert presumptively affects the jury's verdict.

Since the expert's opinion is often the determinative factor to the jury, if a party can disparage an opposing expert by improper and collateral impeachment, then that party's chances of prevailing are sig-

nificantly increased. Thus, I view the impeachment of the expert here about the prior claims as being highly prejudicial to his credibility and therefore to the plaintiff's entire case.

Furthermore, I have reviewed the expert's testimony and have concluded that he is an eminently qualified physician to render opinions on the standard of care, causation, and damages issues involved in this case.

The expert has been a neurosurgeon, practicing his specialty without interruption, for almost 30 years. He completed his neurosurgeon residency at Henry Ford Hospital in Detroit, Michigan. He was certified by the Board of Neurological Surgeons in 1965. For almost 20 years, he taught neurosurgery at a medical school in the Detroit area. At the time of trial, he was still active on the staff of several hospitals. For a substantial period of time, he had been the Chief of Neurosurgery at two different hospitals. He is a member of the American College of Surgeons and belongs to numerous medical societies and organizations. He has testified for both plaintiffs and defendants in numerous court settings and has been recognized and accepted as an expert by those courts.

Moreover, there is nothing illogical or inherently inconsistent about the medical opinions that he gave. He essentially concluded that the surgery done by defendant was negligent and caused plaintiff's injuries because defendant entered the wrong area of the brain. The defendant admitted entering a part of the brain not intended to be within the scope of the surgery, but he claimed that this action was neither negligent nor the cause of the plaintiff's injuries. Under this state of the record, it is apparent that the medical opinions of plaintiff's expert had a significant factual and logical basis, and the improper collateral attack on the expert likely had an unwarranted prejudicial effect on his credibility. Hence, in my view, there is at least a reasonable possibility that the error of permitting cross-examination about prior malpractice complaints affected the outcome of

the case, and therefore, I would reverse the judgment.