25CA1250 Dworakowski v Sisk 06-25-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA1250
Routt County District Court No. 22CV30039
Honorable Brittany A. Schneider, Judge

Eva Dworakowski,

Plaintiff-Appellant,

v.

Michael S. Sisk, M.D.,

Defendant-Appellee.

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE LUM
Welling and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced June 25, 2026

Andrew T. Brake, P.C., Andrew T. Brake, Denver, Colorado, for Plaintiff-Appellant

Hershey Decker Drake, P.L.L.C., C. Todd Drake, Lone Tree, Colorado, for Defendant-Appellee

¶ 1    Plaintiff, Eva Dworakowski, appeals the judgment entered after a jury found in favor of defendant, Michael S. Sisk, M.D., on Dworakowski's medical malpractice claim.  We affirm.

## I.    Background

¶ 2    Dworakowski sought care from Dr. Sisk for osteoarthritis of the right hip and trochanteric bursitis.  She began receiving injections in her right hip bursa and taking anti-inflammatory medication, both of which were ineffective.  Dr. Sisk then recommended a right hip replacement, which he performed on August 11, 2020.  During the procedure, Dworakowski's greater trochanter (a large, boney knob located at the upper, outer side of the femur) fractured.  Dr. Sisk repaired it intraoperatively and completed the hip replacement surgery.

¶ 3    Dworakowski met with Dr. Sisk for a follow-up office visit on August 25, 2020, and reported she was doing well.  Dr. Sisk ordered an x-ray of her right hip (August 25 x-ray) and noted there was proper alignment and intact hardware.  He memorialized the visit and his impressions of the x-ray in an office note.

¶ 4    Three days later, Dworakowski's right hip dislocated, and she was treated at the emergency room.  Dr. Sisk performed a revision

surgery on September 1, 2020. Afterward, Dworakowski continued to have pain and attempted to treat it with several medications before second revision surgery was performed by a different doctor — Dr. William Howarth — a few months later.

¶ 5 Dworakowski filed suit against Dr. Sisk, asserting a claim for negligence. The jury returned a verdict in Dr. Sisk's favor. Dworakowski moved for a new trial, which the trial court denied.

¶ 6 Dworakowski contends that the trial court erred by precluding (1) testimony from her expert regarding the August 25 x-ray and office note; (2) cross-examination of Dr. Sisk and his expert regarding a declaration created by Dr. Sisk; (3) cross-examination of Dr. Sisk regarding other civil suits against him, a 2012 disciplinary letter, and his resignation of surgical privileges at a facility; and (4) arguments in closing regarding the August 25 x-ray and Dr. Sisk's communications at the office visit.

## II. Expert Disclosures

¶ 7 Dworakowski asserts the trial court erred by prohibiting her expert witness from testifying regarding the August 25 x-ray and office note. We disagree.

## A.     Additional Background

¶ 8      In support of her negligence claim, Dworakowski endorsed a retained expert, Devone Mansour, D.O., who disclosed a report and testified at trial.  In his report, Dr. Mansour opined that "during surgery on August 11, 2020, Dr. Sisk was negligent in his attempt to stabilize and repair the Greater Trochanter in the proper accepted fashion."  According to Dr. Mansour, "[t]he method used by Dr. Sisk was inappropriate and destined to fail."  He specifically analyzed and provided opinions about the August 11 surgery, the imaging and surgical report dated the same day, and Dr. Sisk's revision procedure performed on September 1.

¶ 9      His report included the following language: "I will utilize the images I provide with my report as exhibits to demonstrate and show the jury the negligence of Dr. Sisk and show how Dr. Howarth correctly performed surgery which was successful.  I will explain what the images show."  And it described the materials reviewed as "Medical Records of Dr. Sisk, UC Health records relating to the three admissions of Ms. Dworakowski, and related imaging.  Discovery responses of Dr. Sisk.  First session of Ms. Dworakowski's deposition."  The report also attached images

dated August 21, 2019; August 11, 2020; August 28, 2020; September 1, 2020; October 6, 2020; November 2, 2020; and January 29, 2021. But it didn't reference or discuss Dworakowski's August 25 office visit, the August 25 x-ray, or the office note.

¶ 10 At trial, Dworakowski's counsel sought to question Dr. Mansour regarding the August 25 x-ray and office note. Dr. Sisk's counsel objected, arguing that any of Dr. Mansour's opinions about the visit, office note, or x-ray should be excluded under C.R.C.P. 37 because they hadn't been disclosed. The trial court sustained the objection and excluded the testimony.

### B. Applicable Law and Standard of Review

#### 1. C.R.C.P. 26 and 37

¶ 11 C.R.C.P. 26(a)(2)(B)(I) governs pretrial disclosure of experts — like Dr. Mansour — who are retained or specifically employed to provide expert testimony. The rule requires that a party shall disclose, by written report signed by the witness, "a complete statement of all opinions to be expressed and the basis and reasons therefor" and "a list of the data or other information considered by the witness in forming the opinions." C.R.C.P. 26(a)(2)(B)(I)(a)-(b).

> If an expert's opinions and facts supporting the opinions are disclosed in a manner that gives the opposing party reasonable notice of the specific opinions and supporting facts, the purpose of the rule is accomplished. In the absence of substantial prejudice to the opposing party, this rule does not require exclusion of testimony merely because of technical defects in disclosure.

C.R.C.P. 26 cmt. 21. These disclosures must occur within the deadlines laid out in C.R.C.P. 26(a)(2)(C), unless otherwise provided by the court.

¶ 12    C.R.C.P. 37(c)(1) authorizes sanctions for failures to disclose information required by C.R.C.P. 26(a) when such failure is not substantially justified or harmless to the opposing party. *Saturn Sys., Inc. v. Militare*, 252 P.3d 516, 523 (Colo. App. 2011). The burden is on the party who failed to disclose to show substantial justification or harmlessness. *Todd v. Bear Valley Vill. Apartments*, 980 P.2d 973, 978 (Colo. 1999). The question of harm is not whether the undisclosed evidence is "potentially harmful to the opposing side's case," but "whether the failure to disclose the evidence in a timely fashion will prejudice the opposing party by denying that party an adequate opportunity to defend against the evidence." *Id.* at 979.

2.   Standard of Review

¶ 13    We review the trial court's imposition of a discovery sanction for an abuse of discretion. *Cath. Health Initiatives Colo. v. Earl Swensson Assocs., Inc.*, 2017 CO 94, ¶ 8. A court abuses its discretion when its ruling is "manifestly arbitrary, unreasonable, or unfair, or based on a misapprehension of the law." *Id.*

C.   Analysis

¶ 14    Dworakowski contends the trial court violated CRE 401 and 402 by excluding testimony from Dr. Mansour regarding the August 25 x-ray and office note. She asserts that both were disclosed as bases for her expert's opinion, and she argues that the x-ray was "critical" because it "showed the failure of the [first] surgery; and the progressive greater trochanter displacement which caused . . . Dworakowski's hip displacement."

¶ 15    However, while ten x-ray images were attached to Dr. Mansour's report, the August 25 x-ray wasn't. And while the report generally discloses that Dr. Mansour reviewed various medical records and imaging, it doesn't mention the August 25 x-ray, office note, or visit, much less disclose that he believed the x-ray showed the failure of the first surgery. Thus, Dr. Sisk didn't

6

have reasonable notice that Dr. Mansour would offer opinions on this visit and related documentation. *See* C.R.C.P. 26 cmt. 21. Moreover, Dworakowski doesn't explain why her failure to disclose this information was justified or harmless. *See Saturn Sys.*, 252 P.3d at 523; *Todd*, 980 P.2d at 978. For these reasons, we discern no error.

## III.    Attorney-Client Privilege

¶ 16    Dworakowski next contends that the trial court improperly prevented her counsel from asking Dr. Sisk and his expert, Dr. Ronald R. Hugate, questions about the "origin, preparation, delay[,] and circumstances" of Dr. Sisk's declaration describing the surgical techniques he used. The trial court concluded that this inquiry invaded attorney-client privilege. We conclude that any error is harmless.

### A.    Additional Background

¶ 17    Dr. Sisk's declaration stated that on the day of the first surgery, the medical center did not have a particular piece of equipment (a "claw plate") available for his use in repairing the greater trochanter fracture, so instead he used a technique involving screws, washers, sutures, and a "standard figure eight

7

tension band" (figure eight technique). He disclosed the declaration on February 2, 2023. Four days later, Dr. Sisk disclosed his expert, Dr. Hugate, and his report. Dr. Hugate's report was dated the same day as the declaration: January 27, 2023. The report relied on the information contained in the declaration and opined that the figure eight technique was "appropriate and within the standard of care under the circumstances." Dr. Hugate testified at trial. Dr. Sisk disclosed himself as a nonretained expert and also testified.[1]

¶ 18     During Dr. Sisk's cross-examination, Dworakowski's counsel questioned him about inconsistencies between his surgical report, created just after the surgery, and the declaration, created more than two years later. Specifically, counsel highlighted that the surgical report didn't discuss using the figure eight technique. Then, counsel asked why Dr. Sisk decided to "put . . . that description" into his declaration. Dr. Sisk's counsel objected, arguing the information was protected by attorney-client privilege. Dworakowski's counsel argued, "[W]hat I'm trying to establish is ironically, on the same day that the expert's report comes out, the

---

[1] While Dr. Sisk was disclosed as a nonretained expert, it's unclear from the record whether he testified in his lay or expert capacity.

expert is able to say that he did that technique. And without having that documented, he probably could not have said that."

¶ 19     The trial court sustained the objection, explaining that counsel could question Dr. Sisk about the "date of the affidavit, the date of the report, and make any argument and make any inference you'd like to in closing. But asking why [Dr. Sisk wrote the declaration] I think does go into attorney-client privilege."

¶ 20     Dworakowski's counsel used a similar line of questioning with Dr. Hugate, eventually asking him whether the declaration "came to be as a result of maybe your requesting it be put in writing?" The court concluded that this question also asked for attorney-client privileged communications.

### B.     Applicable Law and Standard of Review

¶ 21     The attorney-client privilege protects confidential communications between attorneys and their clients by preventing their disclosure without the client's consent. *Wesp v. Everson*, 33 P.3d 191, 196-98 (Colo. 2001). The privilege "extends only to matters communicated by or to the client in the course of gaining counsel, advice, or direction with respect to the client's rights or

obligations." *Gordon v. Boyles*, 9 P.3d 1106, 1123 (Colo. 2000); *accord People v. Trujillo*, 144 P.3d 539, 542 (Colo. 2006).

¶ 22　　However, the privilege "protects only the communications to the attorney; it does not protect any underlying and otherwise unprivileged facts that are incorporated into a client's communication to his attorney." *Gordon*, 9 P.3d at 1123. And it applies only to "statements made in circumstances giving rise to a reasonable expectation that the statements will be treated as confidential." *People v. Tucker*, 232 P.3d 194, 198 (Colo. App. 2009) (quoting *Wesp*, 33 P.3d at 197). The party claiming the attorney-client privilege has the burden of establishing it. *Wesp*, 33 P.3d at 197.

¶ 23　　We review a trial court's conclusions regarding the attorney-client privilege for an abuse of discretion. *Affiniti Colo., LLC v. Kissinger & Fellman, P.C.*, 2019 COA 147, ¶ 23. A court abuses its discretion when its ruling is "manifestly arbitrary, unreasonable, or unfair, or based on a misapprehension of the law." *Cath. Health Initiatives Colo.*, ¶ 8. However, a "determination of the proper legal standard to be applied in a case and the application of that

standard to the particular facts of the case are questions of law that we review de novo." *A.R. v. D.R.*, 2020 CO 10, ¶ 37.

## C.    Analysis

¶ 24    Even if we assume, without deciding, that the trial court erred by precluding testimony about why Dr. Sisk prepared the declaration, any error is harmless. *See* C.A.R. 35(c).

¶ 25    Dworakowski argues, as she did below, that the purpose of asking about the declaration's origins was to undermine Dr. Hugate's conclusion that Dr. Sisk wasn't negligent in repairing the greater trochanter fracture that occurred during the first surgery.  She wanted to elicit testimony about "whether or not" Dr. Hugate had asked for the declaration so that he could opine that Dr. Sisk had used the figure eight technique — the appropriate standard of care — to repair the fracture.  And, although Dworakowski doesn't explicitly say as much, we presume that she wanted the jury to infer that Dr. Sisk *didn't* use the figure eight technique and that he lied on his declaration so that Dr. Hugate could render a favorable expert report.

¶ 26    The trial court only precluded questions about whether Dr. Hugate had requested that Dr. Sisk prepare the declaration.[2] Dworakowski's counsel extensively questioned Dr. Sisk about his failure to mention the figure eight technique in his post-surgical report and the subsequent inclusion of that information in the declaration.  This included the following colloquy:

> [COUNSEL, discussing the post-surgical report]: Doctor, if you look at the description of the procedure . . . do you see where it says, [']This was repaired with Number 2 Ethibond and some 5.5-millimeter partially threaded cancellous screws with washers to secure that trochantic . . . fracture back to the made base and the femur.[']  Do you see that?
>
> [DR. SISK]: Yes.
>
> [COUNSEL]: That was your entire description of that repair, wasn't it?
>
> [DR. SISK]: Yes.
>
> [COUNSEL]: Then, Doctor, on January 27, 2023, the same day as your expert report was

---

[2] Dworakowski also asserts that the trial court erred by sustaining Dr. Sisk's objection to the question, "Took you several years to finally put in that description, didn't it, Doctor?"  We won't address this argument because the court sustained Dr. Sisk's objection that the question was argumentative, and Dworakowski doesn't explain how the court erred in that respect.  *People v. Gingles*, 2014 COA 163, ¶ 29 (declining to address undeveloped arguments).

published, you decided you wanted to do a better description, didn't you?

[DR. SISK]: Yes.

Likewise, counsel elicited testimony from Dr. Hugate that the declaration was the first time he "saw in writing" that a claw plate wasn't available and that Dr. Sisk has used the figure eight technique. Further, Dr. Hugate acknowledged that the declaration is dated the same day as his report and that he didn't receive the declaration until "a little bit after [his] report was done."

¶ 27 This evidence amply permitted Dworakowski to undermine Dr. Hugate's opinion and cast doubt on whether Dr. Sisk adhered to the standard of care. And we note that the trial court expressly permitted counsel to draw "any inference you'd like to" regarding the declaration in closing argument. Given that, we can't see how any error in precluding testimony about whether Dr. Sisk authored the declaration at Dr. Hugate's behest "substantially influenced the outcome of the case." *In Interest of L.B.*, 2017 COA 5, ¶ 58.

### IV. Impeachment of Dr. Sisk

¶ 28 Dworakowski next argues that the trial court reversibly erred by preventing her counsel from cross-examining Dr. Sisk about a

13

pending medical malpractice case against him, a 2012 disciplinary letter from the Colorado Medical Board, and Dr. Sisk's resignation of privileges from the relevant medical facility. She contends that the pending case, resignation, and letter were admissible to undermine Dr. Sisk's credibility and expertise. We aren't persuaded.

## A. Additional Background

¶ 29 Before trial, Dr. Sisk submitted a motion in limine to preclude evidence or argument about prior lawsuits filed against him. The trial court granted his motion, concluding that Dworakowski had failed to demonstrate "that the prior incidents involved the same or similar medical procedures to make testimony about those incidents relevant."

¶ 30 At trial, Dworakowski's counsel sought to introduce a 2012 disciplinary letter from the Colorado Medical Board concerning a knee surgery and Dr. Sisk's April 2021 resignation of surgical privileges from the relevant medical facility. Counsel argued he would use the disciplinary letter to impeach any expert who gave any opinion about Dr. Sisk's record. And he said that he planned to cross-examine Dr. Sisk using the resignation, arguing that it was

14

relevant because Dr. Sisk resigned four months after Dworakowski made a complaint to the hospital.

¶ 31 Dr. Sisk's counsel objected, arguing that the evidence was irrelevant and prejudicial. The trial court sustained the objection and explained that Dworakowski's attorney may ask where Dr. Sisk had privileges to practice at the time of trial, but not whether he had resigned his privileges. The trial court also excluded the disciplinary letter, reasoning that it didn't concern the same or a similar medical procedure and was therefore improper character evidence under CRE 404(b).

B. Applicable Law and Standard of Review

¶ 32 To be admissible, evidence must be relevant. CRE 402. Evidence is relevant when it has any tendency to make a fact of consequence more or less probable than it would be without the evidence. CRE 401. Still, even relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay." CRE 403. Consistent with these principles, courts should allow wide latitude in cross-examination of witnesses, but counsel should not be permitted to

15

inquire about "subjects which are totally unrelated to the resolution of the issues in the trial." *Locke v. Vanderark*, 843 P.2d 27, 31 (Colo. App. 1992).

¶ 33    That an expert has previously been sued for malpractice may be relevant to impeach an expert's credibility if the prior lawsuits involve the same procedures as the ones at issue in the trial. *See Hock v. N.Y. Life Ins. Co.*, 876 P.2d 1242, 1257 (Colo. 1994). However, prior litigation that doesn't involve the same medical procedures isn't relevant and injects confusion into the proceedings. *Locke*, 843 P.2d at 31. And even if relevant,

> inquiry into unrelated litigation requires, in fairness, that the witness be permitted to explain the nature, circumstances, and the decision, if any, in each case to rehabilitate the challenged credibility. Conversely, if any case was settled, explanation would be necessary regarding the reasons for and terms of any compromise agreement. As a result, this evidence would divert the jury's attention from the dispositive issues in the case and trial preparation and cost could be extensive. In short, the "sideshow would take over the circus."

*Id.* (citation omitted).

¶ 34    The scope and limits of cross-examination and the admission or exclusion of evidence are within the sound discretion of the trial

16

court and will not be disturbed absent a showing of an abuse of that discretion. *Int'l Network, Inc. v. Woodard*, 2017 COA 44, ¶ 42.

## C. Analysis

¶ 35 Dworakowski contends that the trial court erred by excluding evidence about *Olsen v. Sisk*, Moffat County Case No. 22CV30025, a medical malpractice case pending against Dr. Sisk at the time of Dworakowski's trial.[3] Dworakowski argues she should have been able to impeach Dr. Sisk's credibility about his expertise in hip replacements because this case also concerned a hip replacement. We disagree, but for a slightly different reason than the one relied on by the trial court. *See Roque v. Allstate Ins. Co.*, 2012 COA 10, ¶ 7 ("We can affirm for any reason supported by the record, even reasons not decided by the trial court.").

¶ 36 Unlike cases in which prior lawsuits have been deemed admissible for the purposes of impeaching credibility, *Olsen* was still pending at the time of the trial, and there had been no finding that Dr. Sisk was negligent in performing the surgery. Thus, the

---

[3] To the extent Dworakowski asserts the trial court erred by excluding evidence of other prior lawsuits against Dr. Sisk, we decline to address her argument because it's undeveloped. *Gingles*, ¶ 29.

case had minimal probative value. And any probative value was substantially outweighed by the danger of unfair prejudice and confusing the issues. *See* CRE 403; *Locke*, 843 P.2d at 31.

¶ 37 Similarly, Dworakowski contends that the disciplinary letter and resignation were also relevant to Dr. Sisk's credibility as an expert. But we agree with Dr. Sisk that the disciplinary letter is irrelevant because it concerns a completely different procedure (a knee replacement) and was issued eight years before Dworakowski's surgery.

¶ 38 As for Dr. Sisk's resignation, Dworakowski's counsel admitted at trial that he could not "represent that the reason [Dr. Sisk] resigned was because of" her procedure. *See Hock*, 876 P.2d at 1257; *cf. Locke*, 843 P.2d at 31. For this reason, we also agree with Dr. Sisk that the court didn't abuse its discretion by excluding this evidence as irrelevant.

## V. Closing Argument

¶ 39 Finally, Dworakowski contends the trial court improperly limited the scope of her closing argument by prohibiting her from (1) arguing what the August 25 x-ray showed and (2) implying or arguing that Dr. Sisk was negligent because he failed to tell her that

her hip was unstable at her August 25 office visit.  We discern no error.

### A.    Additional Background

¶ 40    Before closing arguments, Dr. Sisk sought to exclude any reference to negligence in his communications with Dworakowski because she hadn't introduced any evidence that his communications were negligent.  Dworakowski argued that any closing remarks about Dr. Sisk's communication with her, or lack thereof, would target his credibility, not negligence.  The trial court ruled that counsel could refer to Dr. Sisk's communications in closing argument for credibility purposes only.

¶ 41    Similarly, Dr. Sisk sought to exclude any criticism of his interpretation of the August 25 x-ray because Dworakowski hadn't introduced any evidence that his interpretation was negligent.  The trial court ruled Dworakowski's counsel could show the x-ray but cautioned counsel against drawing any conclusions that were unsupported by the record.

¶ 42    During closing argument, Dworakowski's counsel used a series of slides.  One of the slides contained the following text:

**EVA DWORAKOWSKI**

Placed her trust in Dr. Sisk

**8/11/2020** Surgery – Was not told that the surgery was unsuccessful – Alyssa Minor told her that Dr. Sisk had cut too far into her femur, which no one has denied in this case – Was led to believe that she would recover – Alyssa Minor did not testify

**8/25/2020** Office Visit – Was misled – not told that Imaging showed that the Screws had come out of the bone and her hip was unstable

**8/28/2020** Hip dislocated and she had to be transported to the ER.

**9/1/2020** 2nd Surgery by Dr. Sisk – Negligently performed

**11/3/2020** Last visit with Dr. Sisk – Not told that surgery had failed, and he told her about the Heterotopic Ossification after it had reached the point of interfering with her ability to function.

**12/18/2020** Surgery by Dr. Howarth

¶ 43    Dr. Sisk's counsel objected to the slide, arguing that it violated the court's order about the content of closing argument.  The court ordered counsel take the slide down and instructed the jury to disregard it.

B.    Applicable Law and Standard of Review

¶ 44    During closing argument, counsel may reference "the facts in evidence and any reasonable inferences" that can be drawn from

20

them.  *Domingo-Gomez v. People*, 125 P.3d 1043, 1048 (Colo. 2005). This includes highlighting pieces of evidence and explaining their significance to the case.  *Id.*  But "[c]losing argument can never be used to mislead or unduly influence the jury."  *Id.* at 1048-49.  And counsel may not introduce new evidence or reference facts not in evidence during closing argument.  *People v. Vergari*, 2022 COA 95, ¶ 32.

¶ 45    "A trial court's decisions regarding the scope of closing arguments will not be disturbed absent an abuse of discretion." *Blood v. Qwest Servs. Corp.*, 224 P.3d 301, 322 (Colo. App. 2009), *aff'd*, 252 P.3d 1071 (Colo. 2011).

### C.    Analysis

¶ 46    Dworakowski argues that she was entitled to argue that Dr. Sisk had "misled" her about her recovery because it was a reasonable inference drawn from the evidence.  But Dworakowski doesn't dispute that she didn't present any evidence that Dr. Sisk was negligent in his communications with her, including at the August 25 office visit.  Thus, the trial court didn't abuse its discretion by ruling that the slide inappropriately suggested as much.

¶ 47    Dworakowski also contends that (1) the part of the slide describing the August 25 x-ray was also a reasonable inference drawn from the evidence and (2) the court erred by not allowing her to argue that the August 25 x-ray "showed that her greater trochanter had continued to be dislocated." But although the x-ray itself was an exhibit at trial, counsel's lay interpretation of it isn't a reasonable inference that can be drawn from the image. Any such interpretation required expert testimony, which Dworakowski didn't present. Accordingly, the trial court didn't abuse its discretion by excluding the slide and related argument from Dworakowski's closing.

## VI.   Disposition

¶ 48    The judgment is affirmed.

JUDGE WELLING and JUDGE SCHOCK concur.